## ARKANSAS STATE HIGHWAY COMMISSION
### *v.* Joe TAYLOR et al

74-1                                                    509 S.W. 2d 817

Opinion delivered June 3, 1974

*Thomas B. Keys, Billy Pease* and *Philip N. Gowan,* for appellant.

*Lightle, Tedder and Hannah,* for appellees.

J. FRED JONES, Justice. This is a condemnation case under eminent domain in which the Arkansas State Highway Commission appeals from a circuit court judgment in favor of Joe Taylor, Jr., et al., for $110,000 in connection with the relocation of Highway No. 67 in White County, Arkansas.

The appellees Mr. and Mrs. Taylor own 395 acres of land located just outside the city limits of Searcy, Arkansas.

The tract lies roughly in the form or shape of an equilateral triangle with its southeast side bounded by the present Highway No. 67. The land has been used for agricultural purposes but its highest and best potential future use is for industrial or residential expansion of the City of Searcy.

For the purpose of relocating the highway and converting it into a four-lane controlled access thoroughfare, the Highway Commission took 32.26 acres in fee. The 32.26 acre strip ran parallel with old Highway 67 and would divide the 395 acre tract with a residual of 209.11 acres lying northwest of the new highway and 153.43 acres southeast of it. The Planning Commission for the City of Searcy had designated an area adjacent to the city as an industrial park and the Taylor land was within the area so designated.

Mr. A. P. Strother, an abstracter in the City of Searcy, and C. V. Barnes who qualified as an expert appraiser, testified as witnesses for the appellee-landowners and their testimony is under attack by the Highway Commission on this appeal. As already stated, the jury returned a verdict of $110,000 in favor of the Taylors, judgment was entered thereon and on appeal to this court the Commission relies on the following points for reversal:

> "The court erred in permitting defendants' witness, Strother, to testify that sales in the area of the property concerned in this litigation reflected a general increase in land values, without first showing comparability of such sales to the subject property.
>
> The court erred in refusing to strike the damage testimony of witness Barnes upon a showing that said witness damaged the subject property in its after value °because of the establishment of the grade of the new highway, an impermissible element of damages, and was then unable to state in dollars and cents the amount of damages he attributed to the remainder for this reason."

Mr. Strother was not the landowner and he did not qualify as an expert in land values or appraisals. He qualified as an abstracter of land titles familiar with deed records and

the matters reflected therein. Mr. Strother's testimony was offered in connection with "market trends" in the area, and there was considerable discussion between the court and the attorneys as to the nature and admissibility of Mr. Strother's proposed testimony. When the Commission's attorney objected to the proffered expert testimony of Mr. Strother and made in-chambers inquiry as to what would be the nature of Mr. Strother's testimony, the attorney for the appellee-landowners stated:

> "Mr. Strother will testify that he is the chairman, has been on the City Planning Commission since it was formed in 1956. I will introduce the land use maps which were adopted by the Planning Commission in 1956, and which map covers this area.

> In addition to that he has prepared a set of docket books which include all the sales of property in the area where this property is located, and in the industrial district, showing sales since 1955, actually, up to date, and he will testify as to what has been the general trend of market data as far as sales of land in that area over the period. He will not testify as to any values specifically."

Following all the discussion pertaining to Mr. Strother's proposed testimony, it apparently still remained unclear as to whether Mr. Strother would attempt to qualify as an expert on land values and testify as to comparable sales in the area, but the trial court's final understanding on the point was expressed by the court as follows:

> "As I understand the law, and as I understand what counsel has said, this witness is not going to be asked to testify as to any land values, that he made no appraisal whatever of any of the properties, and he's not going to testify to market values before or after, but he is simply going to testify as to what the market trend is, and the witness, if counsel can qualify him as an expert in that field, then the court will permit him to do so."

Mr. Strother then testified that he had been an abstracter for 43 years and had been a member of the Plan-

ning Commission of the City of Searcy ever since its inception about 1954. He said the Planning Commission had made plans for land use zoning in Searcy and in the Searcy area. He said he was familiar with the Taylor tract involved in this litigation; that the Taylor tract had been designated by the Planning Commission as within the heavy industrial expansion area, and the trend toward location of the industrial area had definitely been established. Mr. Strother was then asked and answered questions as follows:

"Q. Let me qualify my question. What has been the trend up to April 28, 1972?

A. I would say it would be, at least up to that date, up to at least $3,000.00 an acre for industrial property.

Q. Did you have occasion to examine these records from the period of January, 1970, through January, 1972?

A. Yes, in compiling the work I had to check that.

Q. What was the tendency at that time of actual sale prices during that period of time?

A. Well, I'm of the opinion it would be up to about the $3,000.00 an acre mark.

Q. Well, do you know of any sales, from examination of these records did you find any sales after January 1, 1972, and we will limit that up to April 28, 1972, at less than $3,000.00 an acre?

A. I don't remember any."

On cross-examination Mr. Strother testified that over the past 17 years the City Planning Board had acquired about 600 acres from the original beginning of 20 acres for an industrial park. He said that approximately 550 of the original 600 acres had been developed and that only about 80 acres, and certainly not over 160 acres, still remained to be developed before reaching Mr. Taylor's land. Mr. Strother testified that at the present rate the industrial area would be filled up in from three to five years. He then testified on cross-examination as follows:

"Q. Now, these sales, you have testified you made a study of all the sales that occurred in that industrial park?

A. I have accumulated the information for the study. Now, I have not added up all the valuations and averaged them out, or anything like that. I have not made a study to that extent.

Q. You have not made a study in the sense of comparability of the sales to the Taylor property, for example?

A. No, sir."

Mr. Strother did not qualify as an expert in land values at all. He simply qualified as an abstracter of titles to real property and, of course, as such, the trial court originally held him competent to testify as to the market trends in the industrial area with which he said he was familiar. Mr. Strother not only testified as to the market *trends* in relation to the sales of approximately 550 acres in the industrial park area over the past 17 years, but he testified as to the minimum market value of industrial property. When asked concerning the trend as to the actual sale prices, he did not answer in *percentage* increase but stated that around ten years ago sale prices were around $1,200 per acre and that it has increased to about four times that amount on the average. He said that the *trend* up until April 28, 1972, would be at least $3,000 per acre for industrial property.

It must be remembered that 32.26 acres of the Taylor property was being taken in *fee* and at the minimum price being paid for industrial property, as testified by Mr. Strother, the 32.26 acres of the Taylor property would have had a minimum market value of $96,780. We agree with the appellant that such value testimony was not admissible in evidence unless the land which Mr. Strother testified sold for not less than $3,000 per acre, was shown to be comparable to the property here involved. *City of Little Rock* v. *Sawyer*, 228 Ark. 516, 309 S.W.2d 30; *Ark. State Highway Comm.* v. *Johns*, 236 Ark. 585, 367 S.W.2d 436.

Mr. C. V. Barnes testified as an expert for the landowner. The portion of his testimony under attack in this

case has to do with the elevation of the proposed highway as damaging the entire tract here involved. The substance of Mr. Barnes' testimony on this point was that the grade of the highway to be constructed would involve a fill or elevation of from three feet to five and one-half feet across the property and Mr. Barnes testified that in his opinion, a purchaser interested in buying the property for development would prefer the entire tract before severance where he could have the development of the entire 395 acre tract visible from one side of the tract to the other. On cross-examination Mr. Barnes testified that he did not assign lack of visibility from one side of the tract to the other as a separate element of damage having an independent monetary value, but that he simply took the visual obstruction into consideration as affecting market desirability for development purposes in arriving at his opinion as to difference in the market value before and after the taking. At the close of this portion of Mr. Barnes' testimony, the record appears as follows:

> "MR. PEASE: Judge, he has testified to a noncompensable element of damage, the change in grade. Now I have given him an opportunity to set out in dollars and cents the amount he damaged the property because of this improper element of damage. Had he done this I could have moved to strike that portion of his value testimony. Since he has testified to an noncompensable element and cannot set it out in dollars and cents, his whole testimony as to value must be stricken under the law.
>
> THE COURT: No, sir. I don't think so."

We agree with the trial court on this point. The appellant has only abstracted so much of Mr. Barnes' testimony as it contends is incompetent in this case, but he moved to strike all of Barnes' testimony. We are of the opinion that Barnes' testimony was admissible for the purpose and in the context given and was, therefore, not subject to being stricken on motion of the Highway Commission.

Reversed and remanded.