ARKANSAS STATE HIGHWAY COMMISSION
*v.* Joe TAYLOR, Jr. et ux

80-44                                    602 S.W. 2d 657
Supreme Court of Arkansas
Opinion delivered July 7, 1980
Rehearing denied August 25, 1980

460

Thomas B. Keys and Philip N. Gowen, for appellant.

Lightle, Beebe & Raney, by: J. E. Lightle, Jr., for appellees.

JOHN A. FOGLEMAN, Chief Justice. This is the third appeal in this eminent domain case which was filed in the circuit court on April 28, 1972. On June 3, 1974, we reversed a judgment in favor of the landowner for $110,000 on the ground that an abstracter of titles, who did not qualify as an expert on land values, was permitted to testify as to trends in real estates values in an industrial park area and to state an opinion as to the minimum market value of industrial property in the area, but the land bringing that price was not shown to be comparable to the Taylor land. See Arkansas State Highway Com'n. v. Taylor, 256 Ark. 681, 509 S.W. 2d 817. On October 25, 1976, we affirmed the order of the circuit court granting the landowner's motion for new trial and setting aside a verdict of $56,000 in favor of the landowner, because

of an irregularity in the proceedings with reference to jury selection. *Arkansas State Highway Com'n.* v. *Taylor,* 260 Ark. 524, 542 S.W. 2d 498. The judgment from which this appeal was taken awarded the Taylors $175,000 based on a jury verdict for that amount rendered on October 3, 1979. We will not set out the facts as to the taking with particularity because they are stated in the opinion on first appeal. Appellant asserts the following points for reversal:

## I

THE COURT ERRED IN PERMITTING THE TESTIMONY OF JOE TAYLOR, JR., TO GO TO THE JURY.

## II

THERE IS NO SUBSTANTIAL EVIDENCE TO SUPPORT THE SEVERE SEVERANCE DAMAGE PLACED ON THE REMAINING LANDS BY APPELLEE AND HIS WITNESSES.

## III

THE COURT ERRED IN PERMITTING TESTIMONY BY THE LANDOWNER OF COSTS EXPENDED IN DEVELOPMENT OF PROPERTY IN LITIGATION.

## IV

THE VERDICT OF THE JURY IS EXCESSIVE.

## V

THE COURT ERRED IN RULING THAT APPELLANT'S DEPOSIT OF ESTIMATED COMPENSATION WAS A MATTER TO BE CONSIDERED BY THE JURY.

I

Joe Taylor, Jr., the landowner, testified that the fair market value of his 395-acre tract at the time of the taking was $2,200 per acre. Appellant contends that Taylor based this valuation solely on a sale he had made of a one-acre tract to a public utility about one year prior to the taking. On direct examination of Taylor, his attorney asked him on what he based the value of $2,200 per acre, and Taylor replied, "I base that value on a tract of land that I had sold to a company for $3,000 an acre." When asked if that acre was really comparable, Taylor said that it was not, but that it was the only property sold from the land in the last 40 years. When asked about comparable sales on cross-examination, Taylor said that he did not know of any other sales in the area of lands comparable to his and that he was "more or less relying" on this one-acre sale "because it actually happened."

Joe Taylor, Jr., had lived in Searcy since 1933. He now lives on the land from which the right-of-way was taken. It was outside the city limits at the time of taking. Taylor had bought the land from his father in 1953. His father had owned the land for approximately 12 years. The witness said that he had used the land for agricultural purposes, raising soybeans, milo and cattle, but it was separated from the industrial district of Searcy, which was rapidly growing in the direction of Taylor's land, only by a 40-acre tract. He described the topography of the land and its drainage and discussed the availability of utilities prior to the taking. He testified that he was generally familiar with the value of lands surrounding, or in the area of, his farm and had been in April, 1972, when the right-of-way was taken. He said that the total value of his property had been $869,000 at the time of the taking, but only $612,800 thereafter, making the total damage by reason of the taking $256,200.

Taylor certainly exhibited an intimate familiarity with his property. We have said that landowner who has an intimate acquaintance with his property may give value testimony, even though he had no knowledge of other property values, and that we view his testimony on appeal to see if it has any substantial basis. *Arkansas Louisiana Gas Co.* v.

*Verser,* 251 Ark. 764, 475 S.W. 2d 148. Our review of the landowner's testimony is to determine whether there is a satisfactory explanation given for the conclusion reached. *Arkansas State Highway Com'n.* v. *Watson,* 248 Ark. 422, 451 S.W. 2d 741. This situation bears a great deal of similarity to that we considered in *Arkansas State Highway Com'n.* v. *Duff,* 246 Ark. 922, 440 S.W. 2d 563, where we found the landowner's testimony to be substantial on the basis of his demonstrated familiarity with the land. See also, *Arkansas State Highway Com'n.* v. *Fowler,* 240 Ark. 595, 401 S.W. 2d 1, where we said that it was not necessary to show that the landowner was acquainted with the market value of the property, or that he was an expert on values, but that the weight to be given his testimony would be affected by his knowledge of the value. The landowner's opinion is admissible simply because he owns the land and is qualified to state an opinion as to the value of what he owns and it is to be stricken only if it is demonstrated that there is no fair or logical basis of support for it and not if the basis is only weak or questionable. *Arkansas State Highway Com'n.* v. *Jones,* 256 Ark. 40, 505 S.W. 2d 210.

The mere fact that the landowner did not know of any sales of land at the value he placed upon his property would not demonstrate that he had no reasonable basis for his opinion. *Arkansas State Highway Com'n.* v. *McAlister,* 247 Ark. 757, 447 S.W. 2d 649. In view of the landowner's intimate familiarity with the land in every particular, we find no error in the admission of his testimony. See *Arkansas State Highway Com'n.* v. *Shields,* 249 Ark. 710, 460 S.W. 2d 746; *Arkansas State Highway Com'n.* v. *Price,* 258 Ark. 606, 527 S.W. 2d 907.

## II

Appellant argues that the severance damages about which appellees' witnesses testified are without substantial support because subsequent sales of tracts from one of the residual tracts, which contained 153 acres and lay on the east side of the new highway, for prices up to $6,000 per acre removes whatever substantiality their opinions had. C. V. Barnes, who qualified as a real estate appraiser, fixed that damage at $500 per acre. Barnes said that the fact that the

property was separated into two smaller residuals, without access from either to the highway, had an effect on their value. He pointed out that there had been a loss of 328 feet of highway frontage and of the corner at the intersection of Benton Street, which was shown on the master street plan of Searcy as a principal north-south collector street, and Highway 320, a principal east-west thoroughfare. According to him, the triangular shapes of the two tracts made them less desirable for development. He said that the property was not as flexible or adaptable for use as it had been. It was his opinion that the quarter-mile depth of the 153-acre tract, lying east of the highway was less desirable than the original one-mile depth of the tract.

Appellant argues that Barnes' testimony as to the damage to appellees' remaining land was not substantial when the size of the two residual tracts and the highest and best use are considered. Appellant apparently bases its argument upon the fact that Barnes admitted that the depth of the eastern residual tract was more than adequate for commercial development. Although Barnes had said that the highest and best use of the property in April, 1972, was for future urban development with a high incidence of industrial and commercial use, he had stressed the industrial growth and its trend toward the Taylor property. The depth was only one of the factors Barnes mentioned in saying that the property's flexibility and adaptability for development had been adversely affected. We do not consider that appellant has demonstrated that Barnes' testimony was unsupported by substantial evidence.

Barnes' opinion as to just compensation totalled only $127,500, so appellant's contentions as to the testimony of Taylor and another witness, E. D. Yancey, must be considered. Taylor was of the opinion that the value of the 153-acre tract had been decreased $1,200 per acre by the taking. Appellant says that it was revealed during Taylor's testimony that appellees had, after the taking, sold 12 parcels, the total area of which was 20 acres, from the 153-acre tract at prices ranging from $2,000 to $6,000 per acre. The number of sales was supported only by the statement of appellant's value expert about what his investigation revealed. The first of these

sales took place in 1974. Others seem to have been in 1976. Taylor said that these tracts were in the most valuable area of this tract and that he had spent $93,000 in improving the property by putting in water lines and black top streets.

Yancey, who had been Executive Vice-President of First Security Bank for the past 18 years, qualified as an expert witness on real estate values because of his capacity as commercial loan officer for the bank. He was of the opinion that the value of the land east of the new highway was diminished by an average of $900 per acre because of the taking. He considered that the Taylor land was in the Searcy industrial area prior to the taking, but that the highest and best use of the 153-acre tract after the taking would be for rice farming, although there were parts of it that could have a higher value than rice land would. He said that it would be very difficult to get water and sewer services to the tract after the taking. He said that he had valued the land in 1972 but not according to subsequent conditions. Yancey said that, in his opinion, the difference between the value of the whole tract before the taking and the value of the reamining lands was $186,477.

Appellant's value witnesses agreed with appellees that the highest and best use of the Taylor property at the time of the taking was for industrial development. There was not a wide variance in the views of the expert witnesses as to the value of the land before the taking. Barnes said that it was $1,250 per acre. Yancey said that it was $1,500 per acre. Appellant's expert placed that value at $1,000 per acre. Appellant admits that the value fixed by Barnes is not "patently unreasonable."

Although the witness for appellant differed sharply with those testifying for appellees as to the value of the Taylor land after the taking, we cannot say that the testimony of those witnesses as to severance damage was not substantial.

### III

Appellant argues that the testimony of Taylor as to his expenditure of $93,000 in providing utilities to the property was erroneously admitted because it was not relevant to the

issue before the jury. The testimony to which appellant objected was brought out on redirect examination, after appellant's attorney had asked Taylor on cross-examination about sales of lands from the 153-acre tract after the taking. It was relevant for the purpose of explaining those sales and the prices at which those tracts sold. No limiting instruction was requested.

## IV

Appellant's argument on this point is that there was no substantial evidence to support the severance damage attributed to the 153-acre tract, and no basis for Barnes' testimony that the 209 acres west of the highway had suffered severance damage, and that, because of the sales made by Taylor after the taking, the verdict for $175,000 was the result of passion and prejudice. We cannot say that the verdict was the result of passion and prejudice. The testimony of Yancey would support the verdict, even if the testimony of Taylor had been disregarded by the jury. We have already treated the contention of appellant that the evidence pertaining to severance damage was not substantial except for that of Barnes that the severance damage to the remaining lands west of the highway was $10,500. Barnes' testimony, standing alone, would have only supported a verdict for $127,500, so the jury must have found that the testimony of Yancey and Taylor weighed somewhat more than that of Barnes. In any event, it was for the jury to determine whether to give any weight to Barnes' testimony that the land was worth $50 per acre less after the taking because its size and shape and the elimination of road frontage and a potential "street corner" made it less suitable for development.

## V

Appellant is correct in its argument that ordinarily evidence of the amount deposited by a condemnor as estimated just compensation is not admissible in evidence. The amount is only tentative and the amount ultimately fixed may be more or less than the deposit. 6 A Nichols on Eminent Domain, p. 27-55, § 27.25 [1] (1979). The amount of deposit is not admissible to contradict lower valuations by other

witnesses and should be totally disregarded in fixing the award. *United States* v. *2.1873 Acres of Land,* 461 F. 2d 938 (8 Cir., 1972); *United States* v. *9.85 Acres of Land,* 183 F. Supp. 402, aff'd. mem. 279 F. 2d 890 (4 Cir., 1960). See also, *Arkansas State Highway Com'n.* v. *Blakeley,* 231 Ark. 273, 329 S.W. 2d 158.

In the peculiar circumstances of this case, appellant is in no position to assert error in the trail court's ruling. Appellant made a motion in limine asking that "no mention be made of the deposit in this case." The stated basis of the motion was that "[i]t is an offer of compromise which was rejected by the landowner." This evidence was not objectionable on the ground stated. An offer of compromise is usually inadmissible in evidence, but the thought that the deposit of estimated just compensation was an offer of compromise is misguided. It is only an estimate by the condemnor of the amount to which the landowner is entitled as just compensation for the taking or damaging of his property. Ark. Stat. Ann. § 76-535 (Repl. 1957). Title vests in the condemnor when the deposit is made, and it is the basis upon which the condemnor becomes entitled to immediate possession of the land taken. Ark. Stat. Ann. § 76-535, -538 (Repl. 1957). The court can require that the deposit be increased but the hearing on the amount of the deposit does not interfere with possession already taken by the condemnor. Ark. Stat. Ann. § 76-541 (Supp. 1979).

There was obviously no error in the overruling of this objection. When appellant's attorney made his opening statement, he said that the Highway Department had originally deposited $53,000 as their estimate of the amount of damages to the landowner on the basis of appraisals made by appraisers employed by the department and that their appraisals were made upon the basis that the highest use of the land was for farming purposes. The only witness produced by appellant on the question of land values was Robert E. Shockley, who testified that the highest and best use of the land was for industrial development. Although no mention was made of the deposit during the presentation of testimony on behalf of the landowners, it was natural and proper that appellant's attorney ask Shelton on cross-examination if his

appraisal made in 1972 was used by the department in determining the amount of its deposit. *Arkansas State Highway Com'n.* v. *Blakeley,* supra. When asked to explain why there was a difference, Shelton stated that he understood that those who originally appraised the Taylor property viewed it as agricultural land and not as industrial land and that he did not agree on that point. Appellant made no objection to any of this cross-examination. If there was any error in permitting it, appellant's opening statement rendered the error harmless, even if the opening statement could be evaluated as anything other than an open invitation to appellees to pursue this line of cross-examination.

The judgment is affirmed.

HICKMAN, J., not participating.