## DES ARC WATERSHED IMPROVEMENT DISTRICT *v.* Richard M. FINCH

81-232                                    630 S.W. 2d 17

Supreme Court of Arkansas
Opinion delivered March 8, 1982
[Amended on Denial of Rehearing April 19, 1982.]

*Lightle, Beebe, Raney & Bell,* for appellant.

*Rose Law Firm, P.A.,* by: *W. Dane Clay,* for appellee.

RICHARD B. ADKISSON, Chief Justice. This litigation

was originally before this Court in *Des Arc Bayou Watershed Improvement District* v. *Finch,* 271 Ark. 603, 609 S.W. 2d 70 (1980); we held that appellee, a landowner, could recover his attorneys' fees if appellant, the condemnor, had acted in bad faith in instituting and then later abandoning condemnation proceedings. We remanded for a finding by the trial court on the issue of bad faith. On remand, the White County Circuit Court found that appellant had acted in bad faith and that appellee could recover his attorneys' fees; on appeal from that judgment, we affirm.

The Des Arc Bayou Watershed Improvement District was established in 1966 as a White County flood control and recreation project; it has never been completed although over $3,000,000 in public funds have been spent on the project. In planning the project, the Soil Conservation Service found that fifty-seven acres of appellee's property would be affected by the project; however, appellant took the position that this property would not be damaged. Before releasing the funds for the project, the Soil Conservation Service required that appellant expressly agree to pay "such damages as are finally awarded by the Court" in condemnation proceedings. Appellant offered nothing for the property, and appellee refused to grant a needed floodage easement. Appellant then initiated condemnation proceedings against appellee's property.

Appellant refused to pay the jury award of $30,000 in damages pursuant to Ark. Stat. Ann. § 35-1105 (Repl. 1962):

> Refusal to pay award on abandonment of line — Relocation of project — Liability for costs. — Any levee or drainage district may refuse to pay the award which may have been made by any board of appraisers herein provided for, or the judgment of any court assessing the damages for right of way, and abandon the line and relocate the levee, drain, ditch, or canal anew without being liable for any award or judgments rendered in any proceeding for the condemnation of right of way, except as to the costs.

Therefore the question: Was there sufficient evidence of bad faith to enable the trial court to award attorneys' fees as "costs" under this statute?

Generally, attorneys' fees are not recoverable as a part of the cost unless specifically authorized by statute. There is, however, an exception to that rule when the condemnor has acted in bad faith. *Housing Authority of North Little Rock* v. *Amsler*, 239 Ark. 592, 393 S.W. 2d 268 (1965). In *Amsler* we indicated that bad faith was inferred from the fact that the condemnor alleged in the complaint that the taking was "necessary" and then elected to dismiss the proceedings without explanation after a jury awarded damages. Bad faith was further explained in *Housing Authority of North Little Rock* v. *Green*, 241 Ark. 47, 406 S.W. 2d 139 (1966) where we held that lack of funds to pay an award did not establish good faith on the part of the condemnor, stating that the lack of funds could not be attributed to any fault of the landowner.

Here, appellant alleged in the complaint that the taking of appellee's property was "necessary," but after the jury awarded damages, appellant dismissed the proceeding, stating that there were insufficient funds to pay the $30,000 award. It is significant that after dismissing the proceeding and claiming that no funds were available to pay the award, appellant authorized a second condemnation proceeding in fee against the property. Under these circumstances, the claim of lack of funds is contradicted by appellant's own actions and is an affirmative indication of bad faith. *See Whitestone* v. *Town of South Tucson*, 2 Ariz. App. 494, 410 P. 2d 116 (1966).

Appellant's state of mind is further illustrated by the fact that an appraiser paid by appellant initially filed an appraisal with the court stating that there were no damages to appellee's property; this same appraiser later testified at trial that he not only found damage but found damages in a substantial amount. This change in the amount of the appraisal is reflected by the trial judge's question and the answer of Mr. Clay, attorney for the appellee:

THE COURT:
. . . .

For example, Quattlebaum, $6,950. A transcript might answer this question, did Mr. Quattlebaum

sign an appraisal and file it with the Court saying no damages, and then later testify in Court to $6,950 damages?

Mr. CLAY [The landowner's attorney]: Yes, he did.

Appellant did not dispute this statement, and therefore it must be taken as true. This change of position by appellant's own appraiser is indicative of bad faith and is attributable to appellant.

Another indication of bad faith arises from the length of time it took appellant to make the election to dismiss under Ark. Stat. Ann. § 35-1105 (Repl. 1962). The jury verdict was returned in October 1977, and judgment was entered in March 1978. Appellant filed a notice of appeal in April 1978, and the next day a six months extension for preparing the transcript was granted. Then, in May appellant decided to abandon the proceedings but did not notify the appellee of this decision until December of 1978. During this entire time the cloud and uncertainty of the condemnation action hovered about, detracting from appellant's right to the quiet enjoyment of his property.

In light of the above instances of appellant's bad faith, we cannot say that the trial court's finding was clearly against the preponderance of the evidence.

Affirmed.