ARKANSAS STATE HIGHWAY COMMISSION
v. William H. JOHNSON, et al.

89-236                                        780 S.W.2d 326

Supreme Court of Arkansas
Opinion delivered November 20, 1989
[Rehearing denied December 18, 1989.*]

*Glaze, J., would grant rehearing.

*Robert L. Wilson, Philip N. Gowen,* and *Charles Johnson,* for appellant.

*Sloan, Rubens, Peoples & Coleman,* by: *Kent J. Rubens; Friday, Eldredge & Clark,* by: *Robert V. Light,* for appellees.

DAVID NEWBERN, Justice. This is an appeal by the Arkansas State Highway Commission of a judgment awarding $600,000 to William H. Johnson and other landowners whose property was condemned by the commission to construct a highway interchange. The landowners cross-appeal the trial court's refusal to award attorneys' fees. The commission contends the court erred in permitting the landowners to introduce the testimony of Mr. Sanson, who was not called as a witness by the commission, that he had been hired by the commission to make an appraisal of the land taken and appraised it at $233,600. We agree it was improper to allow Sanson to testify that he formed his opinion at the request of the commission, and thus the decision must be reversed. Because we reverse on this point, we need not address the commission's argument that a court of appeals decision in an earlier appeal of this case is law of the case. We disagree with the commission's second argument that evidence of the amount it determined to be just compensation for the land taken was erroneously admitted. We address that issue in order to guide the trial court upon retrial, and we conclude the evidence was relevant and admissible.

The landowners contend in their cross-appeal that Ark. Const., art. 2, § 22, requires that they be awarded their attorneys' fees because they are to be "made whole." We do not interpret the Constitution as creating a right to attorneys' fees, and thus we affirm on cross-appeal.

At the conclusion of the first trial of this case, the jury returned a verdict awarding nothing to the landowners. Judgment was entered awarding the commission $233,600 which had been deposited by the commission with the court, and disbursed to the landowners, as the amount the commission determined to be the value of the land at the time of the taking. The landowners had sought additional damages, which they claimed had been caused by the taking, for injury to surrounding remaining land owned by them. In response, the commission had contended that the remaining land was enhanced by the taking.

The landowners sought to introduce evidence that two commission appraisers had concluded that there was neither injury to nor enhancement of the value of the surrounding land. They also sought, by a motion in limine, to exclude evidence of subsequent sales of the remaining land. The trial court denied the motion in limine and refused to allow the landowners to present evidence of commission appraisers' answers to interrogatories. The landowners' motion for new trial was granted because the judge concluded he had erred in making these evidentiary rulings and in not holding a sufficiently detailed hearing. The order granting a new trial was affirmed by the court of appeals, and the case was retried, resulting in this appeal.

### 1. Sanson's testimony

Jimmy Sanson is a reviewing appraiser, but at the time of the trial he was a staff appraiser, employed by the commission. He appraised the land to be taken as being worth $233,600. The commission did not call Sanson as a witness but presented the testimony of other appraisers who testified the landowners were not damaged by the taking because of enhancement, caused by the taking, of the value of their remaining lands. There is no doubt, and it is not argued, that a witness such as Sanson can be called to give his opinion by the party who did not originally procure the witness's opinion. The issue here is whether it was error to permit Sanson to reveal that his opinion was originally procured by the commission which chose not to present him as a witness.

In *Arkansas State Highway Commission* v. *Phillips*, 252 Ark. 206, 478 S.W.2d 27 (1972), this court held, with three justices dissenting, that a landowner was permitted to call as a witness a staff appraiser hired by the commission and identified as such to give an opinion, although he was not called as a witness by the commission. In *Arkansas State Highway Commission* v. *Witkowski*, 257 Ark. 659, 519 S.W.2d 743 (1975), it was held the trial court did not err in following the *Phillips* case but that the issue had been decided by a divided court and would be reconsidered. The opinion noted that a majority of jurisdictions would not agree with the *Phillips* decision.

In *Arkansas State Highway Commission* v. *First*

*Pyramid Life Ins. Co.of America,* 265 Ark. 417, 579 S.W.2d 587 (1979), the *Phillips* case was, although not mentioned by name, effectively overruled. It was held, citing the language of the *Witkowski* decision and the cases cited there, that it was prejudicial error to allow a party to introduce into evidence the original employment of an expert witness over the objection of the party who originally employed the expert. While the only reason given in the *First Pyramid* decision was that the original employment of the expert was not "pertinent" to the issue of valuation, the other reasons can be found in Justice George Rose Smith's dissenting opinion in the *Phillips* case. Justice Smith's opinion began as follows:

> I would reverse this judgment. In simple fairness a party ought not to be permitted to show, as the appellees did in the trial court, that his adversary has failed to call as a witness an expert whom his adversary employed merely for the purpose of obtaining an opinion. If such testimony has any effect at all, other than its intended purpose to arouse an attitude of passion and prejudice in the jury room, that effect is completely outweighed by the reasons of policy for not admitting such proof and by the weight of authority elsewhere.

The opinion then pointed out, (1) that such testimony is of no direct benefit to the jury in reaching its decision, (2) that there, as here, there was no reason to suspect wrongdoing by the commission, (3) it is unfair to put the commission in the position of having to explain its action in not calling the witness, and (4) the better reasoned cases do not permit it.

The landowners argue that the *Witkowski* and *First Pyramid* cases are distinguishable or should be reexamined and overruled. With respect to the argument that the cases are distinguishable, no arguments are made, but the landowners refer to the fact that the trial judge distinguished them. Looking to the trial court's order we find his distinction to have been on the basis that "the appraisals" of the commission were used in this case in making representations to third parties, primarily the federal government in obtaining federal funding for the highway project, and that was not so in the *Witkowski* and *First Pyramid* cases.

It was not "the appraisals" that were used to get federal

money for the project. It was, rather, the commission's "statement of just compensation" which is required by the federal guidelines stated in the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 U.S.C.A. §§ 4651 through 4655. The statement of "just compensation" required by § 4651 to be made by the condemning authority to the landowner is clearly a conclusion reached by the agency which shall be no less than "the agency's approved appraisal of the fair market value of such property." The two are obviously separate. The conclusory statement of "just compensation" is like the statement of "just compensation" Ark. Code Ann. § 27-67-312 (1987) requires to be annexed to a declaration of taking made by a condemning authority.

██ Mr. Sanson's appraisal was in the amount of $233,600. That was also the amount stated in the statement of just compensation in this case. The fact that the amount of Sanson's appraisal is the same as the amount of the just compensation statement makes it somewhat difficult in this case to perceive that the two are separate, but they are. Sanson testified that the commission's procedure in establishing the amount of just compensation for land to be taken begins with an appraisal, such as the one he made, by a staff appraiser. That appraisal is then reviewed by a reviewing appraiser. If the reviewing appraiser agrees with the staff appraiser's appraisal, "as of that point, it becomes the official position of the Arkansas Highway Department that this is the amount of just compensation that the property owners are entitled to."

The record includes a deposition by Paul Broyles, Chief of the Right-of-Way Division, Arkansas Highway Department. Mr. Broyles stated the procedure used by the department and noted that an appraisal by a staff appraiser would not necessarily become the department's determination of just compensation to be used for negotiations with the landowner or in obtaining federal funding. It first must be approved by the reviewing appraiser, after which it "would normally be sent to the Acquisition Section and utilized in negotiations with the landowner and in application for federal funds. . . ."

While the issue of the admissibility of the statement of just compensation which we address in the next segment of this

opinion was not raised in the *Witkowski* and *First Pyramid* cases, the issue of the admissibility of the original employment of the appraiser was, and it is the same issue raised here. With respect to that issue, we cannot distinguish those cases from this one.

In asking us to reconsider the *Witkowski* and *First Pyramid* cases the landowners cite *Levitsky* v. *Prince George's County*, 50 Md. App. 484, 439 A.2d 600 (1982) and *Barton* v. *Board of Education*, 617 P.2d 347 (Utah 1982), both of which are clearly contrary to our cases. The *Levitsky* case recognizes the split of authority on the question of revealing the expert's original employment and notes that the Maryland Court of Appeals has chosen the approach of leaving the matter within the trial court's discretion. The opinion in the *Barton* case does no more than recite the argument made by the majority of this court in the *Phillips* case and by the dissenters in the *Witkowski* case. Neither of them presents anything which would cause us to reconsider the issue which was resolved in the *First Pyramid* decision.

Also cited is *Cronk* v. *State*, 420 N.Y.S. 113 (1979), apparently the opinion of a trial judge of the New York Court of Claims, for the proposition that an unfiled appraisal obtained by the condemning authority in excess of that upon which it relied at trial was admissible as an "admission against interest." That rationale is one which was not discussed in the *First Pyramid* opinion or in the *Phillips* and *Witkowski* cases. The opinion in the *Cronk* case points out that the higher appraisal had been used by the condemning authority in representations to the federal government, although the amount sought by the state agency from the federal government was argued to have been less than the amount suggested in the appraisal.

We find the *Cronk* case to be distinguishable from this one. There is no evidence that Mr. Sanson's appraisal was used by the commission in representations to third parties. As explained above, it was, rather, the commission's determination of just compensation which was so used. Again, we see a difference between the appraisal and the commission's conclusion based upon it.

As the amount of Sanson's appraisal and the amount the commission concluded to be just compensation to the landowners

were the same, we must consider whether any prejudice resulted from the error committed in letting the jury know of Sanson's original employment. In closing argument, the landowners' counsel stated:

> Let me say this about Mr. Sanson: You notice that while he was the appraiser that made the original appraisal, established just compensation, did it in conformity—as he testified to you—with Federal and State law what he had to do, following the requirements of the law—had that reviewed by the reviewing appraiser with the Department, who agreed with him, and signed off on it and established that as the Department's official estimate of just compensation that these people were due as a result of the taking of their twelve acres and who called Mr. Sanson. You notice Mr. Gowen [counsel for the commission] didn't call him, and he's an employee out there with Mr. Gowen at the Highway Department—had been for years—he's been there fifteen years. We're the ones that called him. Mr. Gowen could have if he was shooting straight with you. He could have put Sanson on the stand, and Sanson could have explained to you how he made the original appraisal and then how after this suit got going he decided to change his mind on it.

> Ladies and gentlemen, I submit to you that you have seen a case here where the Highway Commission has played fast and loose with the rights of these citizens in making appraisals and then suppressing it, of going out and getting another appraiser at some considerable expense to tell you folks that the Highway Department could take those twelve acres out there and not pay a dime for them. That's what they're trying to do and it's not right—it's not fair.

■ Clearly, full advantage was taken of the evidence of Jimmy Sanson's original employment. When the argument of counsel is considered along with the fact that the jury in the first trial, at which the evidence in question here was excluded, awarded the landowners nothing and the fact that this jury awarded $600,000, we cannot say the error was not prejudicial.

## 2. Evidence of just compensation

In *United States* v. *320.0 Acres of Land*, 605 F.2d 762 (5th Cir. 1979), the condemning authority, following the guidelines found in 42 U.S.C.A. § 4651, provided the landowners a statement of just compensation. At trial, the condemning authority presented evidence of lesser values and argued that Fed. R. Evid. 408 precluded introduction by the landowners of the statement of just compensation because it was a figure used in settlement negotiations. The court of appeals held that the statement of just compensation was an admission. It was proper evidence because, rather than being a negotiation figure, it was a statement of the amount the government believed the landowner was constitutionally entitled to if negotiations should fail.

Both § 4651 and Ark. Code Ann. § 27-67-312 (1987) require estimates of just compensation. The Arkansas statute requires that such an estimate be annexed to the declaration of taking of property for public highway purposes. We agree with the conclusion that the statement of just compensation is not a negotiation or settlement figure excluded by A.R.E. 408. The rationale of the *320.00 Acres of Land* case has been followed in courts of other states, *see, e.g., Thomas* v. *State*, 410 So.2d 3 (Ala. 1982); *Cook* v. *State*, 430 N.Y.S.2d 507 (1980).

In its argument that the statement of just compensation may not be introduced, the commission cites *Arkansas State Highway Commission* v. *Taylor*, 269 Ark. 458, 602 S.W.2d 657 (1980), in which it was held that the amount deposited with the court by the commission, representing the commission's determination of the value of the land at the time of taking, was properly introduced by the landowner because it had already been mentioned by counsel for the commission in his opening statement. The opinion states, however, that "ordinarily evidence of the amount deposited by a condemnor as estimated just compensation is not admissible in evidence. The amount is only tentative and the amount ultimately fixed may be more or less than the deposit," citing 6A *Nichols on Eminent Domain*, p. 27-55, § 27.25[1] (1979). While we find no support for the statement in the cited paragraph in the treatise, we do find it in Chief Justice Harris's dissenting opinion in *Arkansas State Highway Commission* v. *Blakeley*, 231 Ark. 273, 329 S.W.2d 158 (1959).

In the *Blakeley* case, a commission appraiser testified the landowner's land was worth $200 less than before the taking. On cross-examination, counsel for the landowner mentioned that the commission had deposited $500 with the court and asked if the witness had not been working for the highway department when that appraisal was made. The witness answered he had not. The court's opinion contained this *obiter dictum*, which was followed by our court of appeals in *Arkansas Power & Light Co.* v. *Melkovitz*, 11 Ark. App. 90, 668 S.W.2d 37 (1984): had the witness answered "yes," counsel for the landowner could have pursued the matter in order to impeach the witness's testimony by showing he had made a prior inconsistent statement. Chief Justice Harris's disagreement with the latter statement was based on his conclusion that the deposit represented only a "compromise" figure or an "offer" being made by the commission for the land.

We conclude that when the commission is required by federal or state law to reach a determination of just compensation and to communicate that information to the landowner, the court, or third parties, it is by statutory definition more than an offer or compromise figure. While it is true that a jury or court may award more or less than the amount stated, that does not change the fact that such a statement constitutes an admission of the constitutional entitlement of the condemnee, and it should be admissible as evidence to rebut the condemnor's contentions that the condemned property is worth less than the amount stated as just compensation.

### 3. Attorneys' fees

The landowners argue they are entitled to recover their attorneys' fees as a part of their compensation. They recognize that we deny such a recovery when it is sought as part of the costs of litigation in eminent domain cases, *Selle* v. *City of Fayetteville*, 207 Ark. 966, 184 S.W.2d 58 (1944), while we permit it where there is evidence of "bad faith" on the part of the condemning authority. *Des Arc Watershed Imp. Dist.* v. *Finch*, 275 Ark. 229, 630 S.W.2d 17 (1982); *Housing Authority* v. *Amsler*, 239 Ark. 592, 393 S.W.2d 268 (1965). They argue, however, that we permitted a rate of interest in excess of the statutory rate in *Arkansas State Highway Commission* v. *Vick*,

284 Ark. 372, 682 S.W.2d 731 (1985), on the theory that otherwise the landowner would not have been "made whole."

We have some sympathy for the argument that a landowner who is the defendant in condemnation proceedings and who did nothing to bring them on himself or herself but contests only the value of the property in question should not be required to pay for the proceedings. See *Stewart & Grindle, Inc.* v. *State*, 524 P. 2d 1242 (Alaska 1974), where the Supreme Court of Alaska interpreted its rule of court, which allows attorneys' fees where it appears necessary to achieve a "just result," as permitting the granting of attorneys' fees in condemnation cases. The same could be said of many other types of proceedings, however, such as the automobile accident where the plaintiff was doing absolutely nothing wrong when struck by a negligent driver's car.

As the landowners' brief candidly points out, the Supreme Court of Georgia once adopted the position that a landowner was entitled to attorneys' fees in condemnation proceedings, *White* v. *Georgia Power Co.*, 227 S.E.2d 385 (Ga. 1976), only to find itself embroiled in controversy over the decision which it ultimately overruled, *DeKalb City* v. *Trustees*, 251 S.E.2d 243 (Ga. 1978), noting that the problems it faced could be avoided by a well drafted statute.

■ Although we agree the provisions of Ark. Const. art. 2, § 22, constitute a strong exhaltation of the right of property in this state, the right of property comes in many different forms, and we are not prepared to hold attorneys' fees are recoverable to protect any particular one in the absence of an authorizing statute.

Reversed on appeal; affirmed on cross-appeal.

HICKMAN, HAYS, AND GLAZE, JJ., dissenting in part.

STEELE HAYS, Justice, dissenting. While I concur in Sections 1 and 3 of the majority opinion, I believe the majority is mistaken with respect to Section 2. It seems patently clear that our statutes establishing the procedure by which the condemning authority can take immediate possession of lands [originating in Act 115 of 1953 and now codified in Ark. Code Ann. § 27-67-312 through 319 (1987)] did not intend that the estimated compensation deposited by the condemnor be disclosed to the jury. Nothing in Act 115 even remotely implies such a reading, nor does any part

of the language of 42 U.S.C. § 4651, to which the majority opinion makes general reference.

Act 115 plainly was designed to provide a method by which the condemning authority could obtain possession at the outset of a condemnation proceeding, rather than having to wait until the litigation was concluded. That method (provided by Act 115) was to deposit with the trial court an amount equal to the estimated value of the lands being taken. If the condemnor makes the required deposit, it is entitled to immediate possession. Act 115 also provided that the condemnee could protest the amount and the trial judge was empowered under the act to order an increased deposit. Decisions of this court and the Court of Appeals have held that the amount deposited pursuant to Act 115 is not admissible in the subsequent trial and those decisions are sound. In *Arkansas State Highway Commission* v. *Taylor*, 269 Ark. 458, 602 S.W.2d 657 (1980), Justice Fogleman, writing for a unanimous court stated the rule:

> Appellant is correct in its argument that ordinarily *evidence of the amount deposited by a condemnor as estimated just compensation is not admissible in evidence.* The amount is only tentative and the amount ultimately fixed may be more or less than the deposit. 6 A Nichols on Eminent Domain, p. 27-55, § 27.25[1] (1979).[1] [My emphasis.]

That language was quoted verbatim by the Court of Appeals in *Arkansas Power & Light Co.* v. *Melkovitz*, 11 Ark. App. 90, 668 S.W.2d 37 (1984). The qualifying adverb ("ordinarily") appearing in the quoted passage clearly alludes to the exception to the rule, i.e., that the amount of the deposit may become admissible for impeachment purposes where an appraiser who provided the figure used in establishing the amount of the deposit testifies at trial to a lesser figure. In this case impeachment was not the basis of the admission.

Nor is a different course dictated by § 4651. The provisions of § 4651 (Section 301 of the Uniform Relocation Assistance and

---

[1] The cited treatise reads: "Because the amount deposited is only tentative and may be increased or diminished by the final judgment. . .[.]"

Real Property Acquisition Act of 1970) are expressly not mandatory even to federal agencies but are guidelines which are wholly advisory. *See* § 102, Public Law 91-646; *United States* v. *320.0 Acres of Land*, 605 F.2d 762 (5th Cir. 1979), footnote 134. They are in no way binding on this court.

*Arkansas State Highway Department* v. *Blakeley*, 231 Ark. 273, 329 S.W.2d 158 (1959), is an enigma. A bare majority affirmed the modest award of $1,000, in spite of the fact that counsel for the condemnee brought before the jury that the condemnor had deposited $500 at the time of taking. The opinion is too abbreviated to permit a conclusion as to whether the majority considered the incident prejudicially de minimis, or thought that counsel for the Commission had somehow opened the door for impeachment. It *is* evident that the *Blakeley* decision does not suggest the amount of the deposit is admissible as evidence of the value of the lands taken and Justice Paul Ward, fearing that *Blakeley* would be so interpreted, endeavored to make that clear in a concurring opinion:

> I concur because I think the majority opinion is subject to the interpretation (and it may hereafter be so cited) to hold the questioned testimony admissible in any event even on direct examination. I am inclined to the view that such testimony is not admissible except for the purpose of impeachment.

Chief Justice Harris was not willing to leave it to chance and, joined by Justice Holt, wrote a forceful dissenting opinion pointing out the fallacy of permitting the deposit to be used as evidence:

> From a practical standpoint, it seems most illogical to allow such evidence. One thing is certain, if the landowner is permitted to establish the amount deposited by the Highway Commission with its Declaration of Taking, there is no need for the Highway Department to ever offer evidence that the land is of less value than the amount deposited, for, of course, the jury will consider that the Highway Department deposited the very minimum. Certainly, it is contemplated under the statute that the amount determined by the jury may be less than the amount of the deposit, for Section 76-537 provides: "If the compensation

finally awarded shall be less than the amount of money so deposited and paid to the persons entitled thereto, the Court shall enter judgment in favor of the State of Arkansas and against the proper parties for the amount of the excess." Of course, the net result is that the Highway Department, instead of depositing a fair and just sum, will be forced to deposit as small an amount as possible, and the court will frequently be called upon to determine the proper sum for deposit. When this happens, I am of the view that the size of the deposit can be kept from the jury, for this figure fixed by the Court would have the effect of pitting the trial judge's opinion against the condemner's evidence, and would therefore amount to a comment upon the weight of the evidence, which is forbidden under Arkansas practice.

The same concerns expressed in Chief Justice Harris's dissenting opinion were well stated by the Circuit Court of Appeal for the Fourth Circuit in *Washington Metropolitan Area Transit Authority v. One Parcel of Land in Montgomery County, Maryland*, 548 F.2d 1130 (1977):

The purpose of a pre-condemnation offer under [§ 4651] is to expedite acquisition and avoid litigation. The Act says that the offer must not be less than reasonable market value. If the offer is to serve its purpose, it must include something more than reasonable market value for usually the seller is not a willing one and the offer's purpose is the avoidance of delay and the expense of the condemnation proceedings. To permit the offer to be received in evidence in effect would put a floor on recoveries in condemnation proceedings. No amount of explanation would prevent the jury from giving the landowner at least that much. There would be less incentive to accept the offer, and the purpose of the Act would be frustrated.

I find no authority cited in the majority opinion which requires that we forswear our own precedents and on remand I would exclude evidence of the amount deposited by the appellant.

Tom Glaze, Justice, dissenting in part. The majority relies on *Arkansas State Highway Commission v. First Pyramid Life Ins. Co. of America*, 265 Ark. 417, 579 S.W.2d 587 (1979) (First

Pyramid), wherein this court held that neither party to a condemnation case is bound by rejected opinions of expert witnesses employed by them to appraise property being condemned and cannot be prejudiced by the admission in evidence of rejected appraisals made at their instance. The court reasoned that the testimony of such experts is "*not pertinent* to the issue of just compensation." Such reasoning, especially in cases like the one before us now, makes absolutely no sense.

Here, the Highway Commission's original expert, Mr. Sanson, appraised the land in question as being worth $233,600. The Commission heavily relied upon Sanson's appraisal by commencing this condemnation suit and depositing $233,600 as estimated just compensation into the court registry. The state's depositing of this amount is one of five requirements the state must meet before it has the right to enter and take possession of the properties of the condemnees-landowners. *See* Ark. Code Ann. §§ 27-67-312 and -314 (1987). The significance of such a deposit is emphasized by the fact that title to the land vests in the Commission when it makes the deposit with the court. Ark. Code Ann. § 27-67-315 (1987); *see also* Ark. Code Ann. § 27-67-319 (1987). In view of Arkansas's statutory condemnation procedure, it appears obvious the deposit amount made by the state is relevant when determining all facets of the taking of a land-owner's property. If the Highway Commission had rejected Sanson's appraisal rather than relying upon it when taking the appellees' lands, I could argue that such an appraisal was not relevant—or "pertinent" as this court said in *First Pyramid*. However, when the Commission accepted and relied upon Sanson's appraisal when taking appellees' lands, I fail to understand how this court can ignore the value given the condemned lands by Sanson.

The Highway Commission's reliance on Sanson's appraisal was even greater in the present case than in most. Here, the Commission condemned appellees' lands in connection with a project that would allow it to obtain 90% in federal funds to underwrite the cost of acquisition of the right-of-way. Federal law, the Uniform Relocation Assistance and Real Property Act of 1970 (42 U.S.C. § 4651, et al.), required the Commission in this case to give the condemned (landowners) a statement of just compensation. The Commission complied with this federal re-

quirement and in doing so, based its statement of just compensation upon Sanson's appraisal of damages to be $233,600—the same appraisal and amount the Commission first used in commencing this suit and taking the appellees' lands.

In conclusion, the majority court attempts to shore up the faulty reasoning in *First Pyramid* by citing Justice George Rose Smith's dissent in *Arkansas Highway Comm'n* v. *Phillips*, 252 Ark. 206, 478 S.W.2d 27 (1972). The most that I can discern from Justice Smith's dissent is that some policy reason should be adopted to exclude expert opinion testimony like that which is in issue in condemnation cases here. Justice Smith adds that such opinion evidence should not be admissible when there is no reason to suspect any wrongdoing on the part of the Commission. In my view, these arguments are simply unconvincing. The Commission thoroughly relied on Sanson's appraisal when it satisfied their purposes in applying for federal funds and taking the appellees' lands, and I believe the appellees are thoroughly justified in relying on that same evidence to show just compensation for the land. While I do not believe this court necessarily needs to overrule its decision in *First Pyramid* in order to affirm this case, I would have no reluctance to do so. The *Phillips* case, overruled by *First Pyramid*, certainly supported the admissibility of such expert appraisal and I have no hesitancy in returning to that view.

For the reasons above, I would affirm.

HICKMAN, J., joins this dissent.