## SOUTHWESTERN BELL TELEPHONE COMPANY OF ARKANSAS *v.* Olen L. FULMER and Mary Louise FULMER

CA 80-54                                    600 S.W. 2d 450

Court of Appeals of Arkansas
Opinion delivered June 11, 1980
Released for publication July 2, 1980

*D. D. Dupre, Sandra Brown*, and *Penix, Penix & Mixon*, for appellant.

*Guy H. Jones, Phil Stratton, Guy Jones, Jr.. Casey Jones*, by: *Guy Jones, Jr.*, for appellees.

JAMES H. PILKINTON, Judge. This is an eminent domain case. Appellees Mr. and Mrs. Olen L. Fulmer as landowners were awarded $18,000 as just compensation for a right-of-way easement taken by Southwestern Bell Telephone Company, the appellant, for an underground telephone line. Southwestern Bell has appealed claiming there is no substantial evidence to support the verdict.

The petition filed in this case seeks to condemn a 16-1/2 foot right-of-way over the West 16-1/2 feet of the Southwest Quarter (SW 1/4) of Section 28, Township 6 North, Range 13 West, in Faulkner County, Arkansas. It was alleged that this right-of-way easement is necessary for the placement of

buried telephone communication cables to provide additional telephone service to members of the public in Greenbrier, Damascus, Morgantown, Quitman, Rosebud, Enola, Vilonia, and Conway, Arkansas. The petitioner alleges that Mr. and Mrs. Fulmer are the owners of a part of the West Half of the Southwest Quarter (W 1/2 SW 1/4) of Section 28, and the proof shows that the Fulmers own 77 acres in that call. The easement in question runs along the West line of a portion of their property. The parties are in agreement that only 0.69 of an acre of the Fulmer property was actually taken for the easement, but they claim substantial damage to the remainder of their land. The line involved is a cross-country telephone cable which will be buried at a depth of 40 inches below the surface. Insofar as appellees are concerned, the easement covers the West 16-1/2 feet of the Southwest Quarter of the Southwest Quarter (SW 1/4 SW 1/4) of Section 28; and, as the easement continues North, it also covers the West 16-1/2 feet of the South 511 feet of the Northwest Quarter of the Southwest Quarter (NW 1/4 SW 1/4) of said secton. Therefore, the easement is located on the West 16-1/2 feet of the South 1831 feet of the property owned by the Fulmers in the West Half of the Southwest Quarter (W 1/2 SW 1/4) of said Section 28.

Only two witnesses testified for the landowners as to value. Mr. Bob Wilcox, who lives in Greenbrier-Springhill, and who said he had been in the real estate business for 16 years, testified as an expert on behalf of the appellees. Mr. Wilcox had been engaged in subdividing land, and owns an interest in adjoining property. When asked on direct examination for his opinion as to the value of "the Fulmer's property" as of February, 1978, on the date of taking, he stated:

Well, I think it's worth anywhere from $1,000 to $1,200 or $1,300 per acre at that time.

Thus his testimony as to the value of "the Fulmer property" before the taking is not very specific as it contained a spread of $300 an acre between his highest and lowest figure. Mr. Wilcox's testimony is not specific at all as to what particular property he was valuing. Only 77 acres was involved and

alleged to be affected by this easement. In an effort to establish ownership to the property involved, the landowners introduced a series of deeds which together show that they own a total of 209 acres in the area; but, it is apparent that only a part of their land could be affected in any way by the easement in question. Mr. Wilcox did not specify what part of the Fulmer land he was valuing or how many acres were involved in his appraisal. As to the value after taking, with the easement in place, he said, "I would say it has been damaged to the tune of $100 to $150 an acre." He does not identify, however, what land he has reference to in giving his conclusion, or how many acres were involved in his estimate of damage. Since Mr. Wilcox did not specify what land he was valuing, or how many acres of the Fulmer property were involved in his before and after value, we have concluded that his testimony cannot be considered as substantial.

The only other witness for appellees on the question of damages was Mr. Olen Fuller, one of the landowners. While a landowner is permitted to testify as to the value of his property because of his status as an owner, the weight of the landowner's testimony is affected by his knowledge of values. *Arkansas Highawy Commission* v. *Darr*, 246 Ark. 204, 437 S.W. 2d 463 (1969). The rule that an expert need not state the basis of his opinion on direct examination does not apply to non-expert witnesses who must state the basis on direct examination. *Ross* v. *Clark County*, 185 Ark. 1, 45 S.W. 2d 31 (1932). In the case before us, Mr. Fulmer testified that before the line was put in he *believed* his property was worth $1,000 to $1,300 an acre. He further stated that he *believed* the line had decreased the value of "the land" $100 to $150 an acre. At another place in his testimony, Mr. Fulmer said that he wasn't wanting to sell his land, and didn't want to sell it now, but believed he could get $1,000 to $1,300 for it *now*. That was after the easement had been taken. The testimony of Mr. Fulmer is somewhat confusing, but in any event, like Mr. Wilcox, this witness did not specify what land he was talking about in giving his value testimony, or how many acres were involved. In addition, Mr. Fulmer gave no basis whatsoever for his opinion. As already stated, a landowner may testify as to value, but he is required to state the basis for his opinion; otherwise, it cannot be weighed in a proper light by the jury.

Mr. Fulmer's testimony on appellees' damages and just compensation is clearly not substantial.

Appellees seek to justify the amount of the award by claiming that an eight-acre tract, with highway frontage, will be severed by the easement from the other adjoining lands to the east and southeast. Mr. and Mrs. Fulmer own a small tract of land in another Section of approximately eight acres, facing U.S. Highway 65. This eight-acre tract is located directly west of the South 511 feet of the Northwest Quarter of the Southwest Quarter (NW 1/4 SW 1/4) of Section 28. Therefore, this easement is drectly behind the east side of the eight-acre tract. The appellees argued in the lower court, and claim on appeal, that all the Fulmer land east and south of the eight-acre tract, with the highway frontage, will be landlocked and deprived of access. There is no evidence to support such a contention. This case involves a right-of-way easement only for a telephone cable which will be buried 40 inches below the surface. There are no above-ground barriers involved to prohibit access to the property east and southeast of the eight-acre tract. The record shows that this case was tried by the landowners on the theory that the taking was in fee, and that the appellees had lost all rights in the 16-1/2 feet covered by the easement along the west side of a part of their land. In oral argument before this court, counsel for appellees admitted that he had argued to the jury that Southwestern Bell Telephone Company could, under this easement, if it desired, erect a "China Wall" on the easement, and that appellees would be trespassers if they attempted to cross or use this easement in any manner. As already indicated, appellant's right-of-way is an easement only. The taking in this case was not in fee. In the case of *Davis* v. *Arkansas Louisiana Gas Company*, 248 Ark. 881, 454 S.W. 2d 331 (1970) the Arkansas Supreme Court said:

> It has always been recognized in this state that a landowner from whose lands a right-of-way easement has been taken has the right to continue using the surface of the right-of-way for farming or other purposes not inconsistent with the use of the easement after the improvement is constructed. *Ark.-La. Gas Co.* v. *Maxey*, 245 Ark. 15, 430 S.W. 2d 866. We have said that a condem-

nor is granted exclusive possession of the condemned property only to the extent necessary for the erection, operation and maintenance of the improvement for which the easement is taken or granted, and that the landowner has the right of possession subordinate to the paramount possession of the condemnor, with the corresponding right to exercise any and all rights of ownership except such as are inconsistent with the easement. *Patterson Orchard Co.* v. *Southwest Arkansas Utilities Corp.*, 179 Ark. 1029, 18 S.W. 2d 1028, 65 A.L.R. 1446. As a corollary to the recognized principle hereinabove stated, it is said that the rights of the parties are reciprocal and the respective owners must use the way in a manner that will not interfere with the other's right to utilization and enjoyment thereof. *Lindsey* v. *Shaw*, 210 Miss. 333, 49 So. 580 (1950); *Denton* v. *Buffalo Pipe Line Corporation*, 39 N.Y.S. 2d 83 (Sup. Ct. 1939).

Of course in fixing just compensation in this case, the landowners are entitled to be paid for the easement on the same basis as if the taking was in feet; however, that rule has nothing to do with the future use of the land after the easement is in place. Appellees seem to be confused as to the proper application of these two separate rules of law. While *Davis* v. *Arkansas Louisiana Gas Company, supra*, dealt primarily with a different issue than is before us now, the law as stated above applies to the case at bar.

We find no substantial evidence in the record to support the amount of the verdict or for anything approaching that figure. At the same time, the testimony of the appellant's expert witness is not altogether convincing. He admitted on cross-examination that he had considered 123 acres in his appraisal even though the pleadings refer to a lesser number of acres. He also admitted that he had made his appraisal, in part, on the basis of data assembled by others.

Appellate courts have on many occasions offered the landowners in eminent domain cases the opportunity to enter a remittitur. The Arkansas Supreme Court in *Arkansas Highway Commission* v. *Darr, supra*, discussed the rules governing remittiturs. In the case before us, we cannot with confidence on

this record arrive at a minimum sum which the landowners should in any event recover. Since we would have to speculate to fix a remittitur, the case must be reversed and remanded for a new trial.

PENIX, J., disqualified and not participating.