ARKANSAS LOUISIANA GAS COMPANY, A Division
of ARKLA, INC. *v.* Norris G. DOWNS and
Earline P. DOWNS

CA 83-262                                      669 S.W.2d 478

Court of Appeals of Arkansas
Division II
Opinion delivered May 16, 1984

*Daily, West, Core, Coffman & Canfield,* by: *Wyman R. Wade, Jr.,* for appellant.

*Hixson, Cleveland & Rush,* by: *Herschel W. Cleveland,* for appellee.

TOM GLAZE, Judge. This appeal results from an eminent domain proceeding in which a jury awarded appellees $15,000 damages. On appeal, appellant Arkansas Louisiana Gas Company (Arkla) contends (1) there was insufficient, competent evidence to support the verdict, and (2) that the trial court erred (a) in not striking the testimony of appellee Downs concerning after value, (b) in permitting appellees' counsel in his opening statement to note past dealings between the parties, and (c) in denying appellant's motion for a mistrial.

In August of 1981, Arkla entered into an agreement with George L. Terry to construct a roadway, dehydrator, separator and a tank lot on property Arkla believed Terry owned. In March of 1982, Arkla learned that the property was actually owned by the appellees, Norris and Earline Downs. After the Downs got a restraining order to keep Arkla off their property, Arkla sought and was granted an order of entry to permit them to complete the project and to maintain and service the equipment. Subsequently, a jury trial was held to determine what, if any, damages were sustained by the Downs because of the contruction.

In challenging the jury's verdict in this appeal, appellant contends the testimonies of appellee, Mr. Downs, and of appellees' expert, "Butch" Wade, were insufficient to support the jury's verdict of $15,000. It also argues the trial court should have stricken Mr. Downs' testimony because he failed to state a reasonable basis for his opinion.

We first consider the testimony of Mr. Downs. Downs testified that he acquired his 58-acre farm in 1971, and that he believed his property was worth $750 per acre prior to the taking and construction by appellant. He testified further that, in his opinion, the land had decreased in value to $400 per acre because of the taking so that the difference in the

before and after values of the 57 acres was $20,700.[1] Appellant points to various parts of Downs' testimony and concludes there is no basis for the damages he claims. For example, appellant relates that Downs was not qualified as an expert; he did not specify or calculate his loss; he did not claim that the highest and best use for his remaining more-than-57 acres had been altered; he valued the .52 acre that was taken at $4,000, but admitted he had never actually planned to develop that property as a home site; and he was not familiar with any nearby land prices or sales.

Of course, the principle is well established that a landowner may testify to the value of his lands, despite his lack of knowledge of property value, if a satisfactory explanation is given for his conclusion. *Arkansas State Highway Commission* v. *Cottrell,* 9 Ark. App. 359, 660 S.W. 2d 179 (1983); *see also Arkansas State Highway Commission* v. *Maus,* 245 Ark. 357, 432 S.W.2d 478 (1968). Although Downs might have strengthened his testimony by supplying detailed losses or comparable sale figures, it cannot be said seriouly that he had no reasonable basis for his opinion about the value of the land.

Downs and his wife have lived on the 58-acre farm for twelve years. He has used the property to raise chickens, run cattle and grow hay. He testified that the .52 acre taken by appellant was located on the highest point and in the center of his property. Downs said that the large dehydrator and the tank — which extends twenty feet above the ground — are visible from anywhere on the property. Besides being aestheticly displeasing to Downs, he testified that he lost that portion of the property for grazing purpose and for raising hay. Too, he added that he and his wife had discussed building a house at the same spot on which the unit was built. Finally, Downs further related that noise, a "rotten" odor and "clouds like soapsuds" emanated from the unit. Reviewing all of Downs' testimony, we believe that he clearly demontrated the necessary familiarity with his

---

[1]In his calculations, Mr. Downs excluded the acre taken when he figured the after value. Thus, the before value, $750 X 58 acres, minus the after value, $400 X 57, equals the difference, $20,700.

property upon which he based an opinion concerning its value.

Next, we consider appellant's challenge of the testimony given by appellees' expert, Mr. Wade. Wade opined that total damages to the Downs were $16,600, *viz.*, $12,000 damages for the difference between the before an after value of the land, $4,000 for the .52 acre actually taken and $600 for the loss of land on which the roadway was built and for the pasture. Appellant primarily attacks Wade's opinion testimony because, it argues, Wade admitted that he did not have a single example of the market value of grazing land having decreased in value because of the existence of a dehydrator. Appellant contends that expert testimony similar to Wade's was determined incompetent and stricken in *Arkanas-Missouri Power Co.* v. *Sain,* 262 Ark. 326, 556 S.W.2d 441 (1977). In *Sain,* the Arkanas-Missouri Power Company had condemned seven acres through a farm for the purpose of obtaining an easement for a transmission line. The Supreme Court, noting that "the expert on cross-examination admitted that he could not think of a single instance where a transmission line had any effect on the market value of the property," held the expert's testimony that the damages amounted to $27,197 did not have a sound and reasonable basis. *Id.* at 327-28, 556 S.W.2d at 442. The Supreme Court's holding in *Sain* is not controlling here, however, because Wade did have personal knowledge of a piece of property with a facility like that constructed on the Downs' property. In fact, Wade testified that he listed such property but "never got the opportunity to show it [because] they did not want to be near a facility like that." *Cf. Fulmer* v. *Southwestern Bell Telephone Co.,* 9 Ark. App. 92, 654 S.W.2d 603 (1983). In addition, Wade used comparable sales to support his value opinion. One comparable included a forty-acre farm located in Logan County that sold for $721 an acre about four months before the trial in this cause. Wade testified this forty-acre tract had "no road to it when it was purchased at that price" and it was "similar-type property but not as cleared and clean as this [Downs'] property." Another comparable given by Wade was property adjacent to the Downs' farm that sold at $780 per acre. Wade emphasized that the knoll on which appellant built its unit is the high

point — which is also the best view — of the Downs' property. He explained that because that knoll was the best acre on the farm and was in the center of the tract, the dehydrator's presence on that spot affected the property's market value to a buyer who wanted the land for a home and for grazing. Wade also considered the noise, smell, looks, fire and view as factors when arriving at his before and after value figures. In sum, he bound his diminution in the value of the acreage surrounding the acre in the middle of the farm land upon his "fifteen years of experience with buyers and what they prefer." From our review of the record, we believe the testimonies of both Downs and Wade are competent and substantially support the jury's verdict. *Butler* v. *Arkansas State Highway Commission*, 6 Ark. App. 267, 640 S.W.2d 467 (1982).

For its third point, appellant contends that the trial court erred in permitting the jury to hear and consider certain historical recitations about past dealings between appellant and appellees. Appellant's objection stems from remarks made by appellees' counsel in opening statement to the effect that appellant had gone to the appellees prior to this taking to request permission to survey the property, which request, according to appellees' counsel, was granted. Appellant's counsel objected at trial, and the court sustained the objection and warned appellees' counsel to deal only with the value of the property. On appeal, appellant contends the reference was so damaging that the court should have admonished the jury to disrgard the statement. However, the record does not indicate that appellant requested an admonition; therefore, the trial court did not err in not admonishing the jury. *Rickett* v. *Hayes*, 256 Ark. 893, 511 S.W.2d 187 (1974).

Appellant's last argument is that the trial court erred in not granting a mistrial when appellees' expert witness stated that one of his considerations in appraising the property was "the liability exposure." Appellant cites no authority for the proposition that a statement concerning potential liability is prohibited in an eminent domain proceeding. The trial court did prohibit the witness from making further references to possible liability of the appellees, and on its

own motion, the court admonished the jury to ignore the witness's comment. A trial court is vested with considerable latitude and discretion in granting or denying a mistrial. *Dickeron Construction Co.* v. *Dozier,* 266 Ark. 345, 584 S.W.2d 36 (1979). It is an extreme measure to be taken only when it is apparent that justice cannot be served by continuing the trial. *Morton* v. *Wiley,* 271 Ark. 319, 609 S.W.2d 332 (1980). We find no abuse of discretion in the trial court's action in denying appellant' motion for mistrial. If error resulted from the remark, we believe it was cured by the trial judge's admonition to the jury.

Because we find substantial evidence to support the jury's verdict in favor of a $15,000 award to appellee, we affirm.

Affirmed.

MAYFIELD, C.J., and CLONINGER, J., agree.