ARKANSAS LOUISIANA GAS COMPANY, A Division
of Arkla, Inc. *v.* Jack JAMES and Mrs. Jack JAMES

CA 84-400                                    692 S.W.2d 761

Court of Appeals of Arkansas
Division I
Opinion delivered June 19, 1985

*Daily, West, Core, Coffman & Canfield*, by: *Stanley A. Leasure*, for appellant.

*Gary R. Cottrell*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. Arkansas Louisiana Gas Company appeals from a judgment awarding Jack James and his wife the sum of $7,500 as compensation for the taking of a portion of his lands by eminent domain. It contends that the trial court erred in denying its motion to strike the testimony of the appellee and his expert witness, and in denying its motions for a directed verdict and for mistrial. We find no error.

The appellant brought this action to acquire a 40 foot right-of-way across appellees' property comprised of 2.3 acres for a

pipeline. At the trial the appellee offered his testimony and that of one expert witness as to the extent of the damage resulting from the taking which amounted to $16,924. Appellant offered testimony from its expert witnesses in rebuttal. The jury returned a verdict in favor of the appellee in the sum of $7,500. After appellee concluded his testimony the appellant moved that it be stricken because he had not testified either to the value of the property actually taken from the easement or the before and after value of the remainder of his property outside the easement and his testimony was therefore irrelevant. We cannot agree. The testimony in that respect is as follows:

Q. Do you have an opinion as to the fair market value of the property, 2.3 acres of property which was taken by this easement?

A. Yes I do.

Q. What is that?

A. You'd like for me to give it to you?

Q. Yes.

A. Okay, I have a total here in two separate figures— —.

Q. Okay, I'm speaking only of the 2.3 acres.

A. Of the 2.3 acres, all right, $7,500 for the 2.3 acres. That is the right-of-way, now, the 152 rods, 40 foot wide.

Q. Yes.

A. Okay, we valued that at $7,600.

Q. And that is your opinion as to — —.

A. The damages, for what the 2.3 acres was worth.

Q. That's the total damage?

A. For my total damages, yes, $16,924.

It is clear to us that the appellee stated that the lands actually taken for the easement had a fair market value of $7,500 ($7,600) and that when added to the reduction in market value of his other lands the total damage was $16,924.

■   Our law is also firmly established that a motion to strike the entire testimony of a witness is properly denied where any part of that testimony is admissible. *Urban Renewal Agency of the City of Harrison* v. *Hefley*, 237 Ark. 39, 371 S.W.2d 141 (1963); *Ark. State Hwy. Comm'n* v. *Bowman*, 237 Ark. 51, 371 S.W.2d 138 (1963). Even if some portion of appellee's testimony was inadmissible his testimony as to the value of the 2.3 acres actually taken was proof of at least one of the two elements. For that reason alone it was not error to deny a motion to strike the entire testimony. *McCormick, McAlister, supra.*

After his expert had testified but before closing his case appellee was recalled to the witness stand and testified that in his opinion the entire tract had a fair market value of $288,572 before the taking and a diminished value of $261,647 after the taking and that his total damages were $16,924. The appellant then moved to strike this testimony on the ground that the testimony of fair market value of the entire tract before and after the taking is not the measure of damages in partial taking cases and the testimony was therefore irrelevant. The appellant argues that the only measure to be applied for a partial taking is the fair market value of the lands actually taken plus the reduction in market value to the remainder of the tract.

■■   While we might agree that this is the correct measure of damages for a partial taking we cannot agree that failure to strike the testimony of before and after values was prejudicial error. Our court has recognized a difference in measuring just compensation in takings by the sovereign and those by private corporations. The proper measure of just compensation to be awarded in the exercise of the sovereign's right of eminent domain is the difference in the fair market value of the entire tract immediately before and the fair market value of the remaining lands after the taking. *Young* v. *Ark. State Hwy. Comm'n*, 242 Ark. 812, 415 S.W.2d 575 (1967). In that type of case the trier of fact may consider any special benefits resulting from the public improvement and offset any resulting enhancement of value against the damages, for where the public use enhances the value of the remainder of the land, the owner is held to have received just compensation to the extent of that enhancement. *City of Paragould* v. *Milner*, 114 Ark. 334, 170 S.W. 78 (1914).

The Arkansas Constitution permits the State to delegate its power of eminent domain to private corporations but Art. 12 § 9 places the following restriction on the exercise of that right:

§ 9. No property, nor right of way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law.

In *Cate* v. *Crawford County*, 176 Ark. 873, 4 S.W.2d 516 (1928) the court construed the requirement that the land owner be compensated *in money* as restricting the set-off of special benefits, or enhancement, against the value of the lands taken for private use. A private corporation as condemnor is liable to the land owner for the fair market value of the lands actually taken and any damage resulting to the remainder of the tract. *Ark. La. Gas Co.* v. *Howell*, 244 Ark. 86, 423 S.W.2d 867 (1968); *Ozark Gas Transmission System* v. *Hill*, 10 Ark. App. 415, 664 S.W.2d 892 (1984). There are no other differences in these two types of eminent domain cases in the measuring of just compensation. This constitutional restriction placed on private corporate condemnors which prevents any set-off in favor of the corporation for special benefits is intended to protect the land owner's rights to just compensation. While testimony as to the before and after values might be prejudicial to the land owner as permitting the trier of fact to consider special benefits, it prejudices no right of the appellant corporation. If there was technical error in admitting this testimony of appellee it was harmless.

It is well settled that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of his property regardless of his knowledge of property values and it is not necessary to show that the owner was acquainted with the market value of his property or that he is an expert on value. Only the weight of the testimony is affected by his knowledge of value and

this testimony should be stricken only where it has no reasonable basis. *Ark. State Hwy. Comm'n* v. *Maus*, 245 Ark. 357, 432 S.W.2d 478 (1968); *Arkla Gas Co.* v. *Downs*, 11 Ark. App. 231, 669 S.W.2d 478 (1984).

The land owner testified that he had lived on this particular tract since 1959. He described his land as being highly improved and productive pasture land. Although he had not sold any land between 1960 and the date of trial he had purchased over 800 acres of land and was generally familiar with the values of land in the community. He testified to those things which he had considered in concluding that the value of his remaining property had diminished, including the facts that the easement ran within 15 feet of his home restricting his use of it and the warning signs were placed across his property along the easement. We cannot conclude that the appellee's testimony had no reasonable basis.

When the appellee was recalled to give his before and after testimony he stated his opinion as to both. The appellant did not cross-examine him to determine the basis on which those opinions had been established. Once the land owner or his expert had expressed his opinion as to the fair market values the burden was upon the condemnor to establish by cross-examination that the landowner or expert witness had no logical basis to support his opinion before the testimony was subject to being stricken. *Ozark Gas Transmission System* v. *McCormick, supra*; *Ark. State Hwy. Comm'n* v. *Johns*, 236 Ark. 585, 367 S.W.2d 436 (1963). Insofar as *Southwestern Bell Tel. Co.* v. *Fulmer*, 269 Ark. 727, 600 S.W.2d 450 (Ark. App. 1980) is at variance with *McCormick* and cases cited there we decline to follow it.

The appellant moved to strike the testimony of the appellee's expert witness Lee Hackler. Mr. Hackler testified that he had been in the business of selling and appraising real estate for twelve years. He testified that he had made an appraisal of the appellee's property on April 21, 1982 "when the pipeline was proposed" but had not yet been put down. He stated that he had visited the property subsequent to the laying of the pipeline and was familiar with it before and after the pipeline was laid. In the course of his examination the following transpired:

Q. Did you make an appraisal on the property?

A. I did.

Q. As to the difference in fair market value?

A. Right, I thought there was at least $12,500 damages to this property.

Q. That's the difference between — —.

A. Market value at the time and the difference because of damages that was made.

Q. In your practice in realty are you familiar with other types of property the same as this property?

A. Yes.

Q. So you had experience in dealing with this type of property?

A. Yes, I sure have.

Q. And you consider the difference in fair market value $12,500?

A. $12,500.

The appellant then moved to strike the testimony because it gave no opinion as to the fair market value of the property taken or the fair market value before and after the taking to the remainder. Appellant argued that this was an improper measure for a partial taking and that the testimony was therefore irrelevant. For the reasons already stated we find no prejudicial error.

The witness clearly stated that in his opinion the difference in the fair market value of the property immediately before and after the taking was $12,500. Ordinarily an expert witness will first state his opinion as to the value of the property immediately before the taking followed by his opinion as to its value thereafter and after making the necessary mathematical calculations state the difference. We do not require that the testimony be given in that mechanical fashion. *Ark. State Hwy. Comm'n v. Darling*, 243 Ark. 386, 420 S.W.2d 94 (1967). What our cases do require is an expert opinion as to the difference between the two values. It is clear from the testimony that Hackler made two appraisals—one to establish the market value before and one to establish it after the taking. He was not asked on

cross-examination to state those values; nor was he cross-examined on how he arrived at them. Once the expert witness has expressed his opinion as to the difference in fair market value the burden shifts to the condemnor to establish by cross-examination that he had no logical basis to support his opinion before the testimony is subject to being stricken. *Ozark Gas Transmission System* v. *McCormick, supra*; *Ark. State Hwy. Comm'n* v. *Jones, supra*.

On cross-examination it was developed that Hackler could not recall the actual date of the taking and could not state the width of the easement, the size of the pipeline or how deep the line had been placed in the ground. When asked if he did not think that those factors made a difference in his appraisal he answered that they did and offered to refer to his notes. He was not permitted to do so because appellant then went to a new line of questioning. The appellant argues that without knowledge of the width and depth of the pipeline easement his appraisal had no reasonable basis. We conclude that he did know and recorded these facts at the time he made his appraisals but he simply had no present recall without reference to his notes.

After Hackler had completed his testimony the appellant again moved to strike his testimony stating that it had no foundation as he was unfamiliar with the property at the time of the taking and reasserted his argument that he had applied an improper measure of damages. The appellant now contends that the appraisal should have been stricken because the witness could not state the date of taking and therefore could not know the market value immediately before the taking. The record reflects that the order of entry was dated March 23, 1982. The witness testified that he had made an appraisal of the property at a time when he knew the easement was "proposed" but before the pipe had been laid. His written appraisal was dated April 21, 1982. Our law requires that the appraisal reflect the fair market value of the property as of the date of taking. There is no requirement that the appraisal actually be made on that date. We cannot conclude that an appraisal made within thirty days of that date does not reasonably reflect the required market value.

Hackler testified that the remaining portion of appellee's

property had diminished in value due to the presence of the pipeline. He was asked if he knew of any property value that was decreased by a pipeline easement He answered:

A.  I cannot give you a specific yes or no, but I will say this. Any time there is limited use, restriction of property, there is damage to it, so any time you have an easement restriction or reservation it is detrimental to the value of the property.

Q.  Can you tell this jury of any property today that was decreased in value because of an underground pipeline?

A.  Yes sir, Jack James.

Q.  Anyone other than that?

A.  Any place that you find an easement I will show you a piece of property that's worth less money.

Q.  I'm asking you specifically do you know any comparable that was decreased by the underground pipeline easement?

A.  I've never seen an easement that close to a man's house before. I haven't.

Q.  Would you tell this jury, just answer my questions? Can you tell this jury — —

A.  I cannot give you a specific — —.

Relying on *Ark.-Mo. Power Company* v. *Sain*, 262 Ark. 326, 556 S.W.2d 441 (1977), appellant argues that the expert's testimony should have been stricken because his severance damage testimony was without reasonable basis. We do not agree.

In *Sain* the expert witness testified that the difference in value between a farm before and after the condemnation was $27,197. That testimony was stricken because on cross-examination he admitted that he could not think of a single instance where a transmission line had any effect on the market value of the property. There is no recital of what he said about how he based his opinion that the easement had diminished the value of the property. *Sain* has been the subject of discussion in many of our opinions both published and unpublished. In those opinions we have not construed *Sain* as holding that in every instance where an expert knows of no comparable sale his testimony of diminished value has no reasonable basis. In *Southwestern Bell Tel.*

*Co.* v. *Fulmer, supra* and *Arkansas Louisiana Gas Co.* v. *Downs, supra,* we distinguished *Sain* where the expert had knowledge of properties whose values had been affected by the placement of an easement. In *Fulmer* the witness testified that to his knowledge utilities had affected the values of property and in both *Fulmer* and *Downs* the witness knew of a piece of property that could not be sold at any price after the easement had been established. In *Fulmer* we recognized that expert testimony is competent even if based on hearsay and as no two tracts of land are identical, latitude in evaluating comparable sales must be granted. We further recognized that the opinion testimony of an expert can be considered even though his opinion is not based entirely on comparable transactions.

Here the witness testified that although he had no knowledge of a specific tract where the value had been diminished, it was his expert opinion that the easement would affect the determination of a willing buyer to purchase it. It would diminish its value especially where, as here, the easement ran so close to the principal improvements on the property and restricted future expansion. In this instance we conclude that the lack of knowledge of comparable sales went to the weight of the testimony rather than to its admissibility.

Appellant's contention that the court erred in not granting a directed verdict because the evidence was insufficient is based entirely upon its assertion that all of the appellee's testimony and that of his expert should have been stricken. We have concluded that the evidence was properly admitted and is sufficient to sustain the verdict of the jury.

In support of his claim for severance damages the appellee attempted to show damages to his fences and fields and other special damages. He first described his property as it appeared before the taking. In attempting to describe the conditions existing after the construction began he gave some answers regarding the conditions of the area within the condemned strip. After several objections there was an in chambers hearing at which it was explained to the appellee what the proper measure of damages was and that some of the proof he sought to offer was improper and irrelevant. Apparently he was cautioned to restrict

his testimony to the conditions existing on the land outside the easement. Thereafter several other objections were made in court, some of which were sustained and some overruled. After one such objection was sustained the following occurred:

Q. How much was the house worth prior to the time that the easement went through?

MR. LEASURE: I object to that also. The issue is the value of all of the property off of the easement before and after.

THE COURT: Sustained.

THE WITNESS: Your Honor, may I ask you a question? I am confused. I don't know how to testify —— if I can't say what my property was worth before and I can't say what it was worth afterwards, how can I testify?

THE COURT: You can say it exactly like that but you see, that is what we were talking about in there about thirty or forty minutes or whatever it was, but we are bound by what the Arkansas Supreme Court and the Court of Appeals tells us to do, and that's what we have to go by.

The appellant contends that it was error to overrule its motion for mistrial. Appellant argued that the effect of appellee's comments presented to the jury a picture that appellee was being precluded from telling his story by the legal maneuvering of the appellant. It argues on appeal that the court's response compounded the prejudice by making it appear that the court had sympathy for appellee. Appellant argues that this amounted to a prohibited and prejudicial comment on the evidence and that the jury was irrevocably tainted by the remarks of both appellee and the court.

A mistrial is a drastic remedy and ought not to be resorted to unless there has been an error so prejudicial that justice could not be served by continuing in the trial and there is no other method by which the prejudice can be removed. A broad discretion is vested in the trial court in acting on motions for

mistrial because of his superior position to judge the possibility of prejudice. His exercise of that discretion will not be reversed in the absence of manifest abuse.

The trial court was in a better position to determine the effect of the appellee's statement upon the jury and the reaction they might have to it. He concluded that the appellee had not intended to inflame the jury or obtain its sympathy and that appellee's comments had not had that effect. The appellant has not pointed out to us and our review of the record has not disclosed anything that would indicate that the trial judge was wrong or that his discretion was manifestly abused. We agree with the trial court that the appellee was merely confused because he was being required to change the way he had intended to testify.

Appellant also argues that the judge's comments amounted to a comment on the evidence. This issue was not raised below and will not be addressed for the first time on appeal.

Affirmed.

CORBIN and COOPER, JJ., agree.