PROPERTY OWNERS IMPROVEMENT DISTRICT
NO. 247 OF PULASKI COUNTY, ARKANSAS *v.* W.
Douglas WILLIFORD, Willis E. and Juanita Starks,
Thomas C. and Peggy Joyce Starks, Ronald Reed Hopper
and Diana R. Griffin Hopper

CA 91-369                                          843 S.W.2d 862

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1992

*Friday, Eldredge & Clark*, by: *Michael G. Thompson* and *Andrew T. Turner*, for appellant.

*Hardin & Grace* and *John T. Harmon & Assoc., P.A.*, for appellees.

MELVIN MAYFIELD, Judge. The appellant is an improvement district which was formed for the purpose of building a sewer system to serve certain lands in Pulaski County. It filed suit against the appellees to condemn the permanent and temporary easements alleged to be necessary to construct and maintain the system. A total of .7558 acres was taken for the permanent easement and 1.8213 acres for the temporary construction easement.

There are five tracts of land owned separately by the appellees. The tracts vary in size from about 8 to slightly less than 2 acres. Appellees own a total of 17 acres, with more than one-half of it located within the Rock Creek "floodway" as designated by the Federal Emergency Management Agency. Other portions are located within the designated "floodplain." The property is effectively severed by the creek. The portion north of the creek fronts on Kanis Road. Access to the portion south of the creek is severely limited.

Appellant deposited $1050 as estimated just compensation for the property condemned. At trial the appellant's witnesses

testified that the market value of the appellees' property before the taking would range from $1000 per acre to about 5300 per acre. The testimony of the appellees' witnesses placed that value in a range of $340,000 to $420,000 per acre. The jury returned a verdict for the appellees in a total amount of $82,768.30. For reversal, the appellant argues four points. We discuss each point separately but not necessarily in the same sequence argued by appellant.

## I.

The first point we discuss is appellant's contention that "the trial court should have struck the landowners' value testimony."

The record shows that this case was tried two times. In the first trial the court granted the improvement district's motion for directed verdict in the amount of its deposit. This resulted from the court's granting the district's motion to exclude the testimony of the landowners' expert witnesses on the basis that their testimony was not admissible on the issue of the amount due for just compensation to the landowners. Afterwards, the court granted the landowners' motion for new trial. This appeal is from the judgment entered after the second trial. The point now under discussion was raised by appellant's motion to strike the testimony of the landowners' two "expert" witnesses who had also testified in the first trial.

One of the expert witnesses was John W. "Jay" DeHaven. The appellant argues the court should have struck Mr. DeHaven's testimony because he did not have a reasonable basis for his testimony. We do not think it would serve any purpose to discuss the testimony of this witness in detail. Suffice it to say that the motion to strike presented a matter largely within the sound discretion of the trial judge. *Arkansas State Highway Commission* v. *Kennedy*, 233 Ark. 844, 849, 349 S.W.2d 133 (1961). *See also Arkansas Louisiana Gas Co.* v. *James*, 15 Ark. App. 184, 692 S.W.2d 761 (1985). We cannot say that the trial judge erred in refusing to strike Mr. DeHaven's testimony.

The landowners' other expert witness was Mary Kay Peyton. We discuss her testimony in some detail in order to explain our holding on this point and because her testimony is also involved in our consideration of appellant's third point for reversal.

Ms. Peyton was an employee of the Maumelle Company. Mr. DeHaven was president of that company. Both he and Ms. Peyton testified that the highest and best use of the appellees' property was for commercial development. Ms. Peyton was not an appraiser but was a licensed real estate broker and was general sales manager at the Maumelle Company, which was a land development and marketing company. This case was Ms. Peyton's first time to give an opinion on value to a jury in a condemnation case.

At the first trial Ms. Peyton's testimony was struck because she "figured" the value of the entire property owned by the appellees at $2.50 per square foot. She then used that figure to determine the value of the portion taken for easement purposes by the appellant. She testified: "But I did not determine separately the fair market value of the actual easement itself, independent of the rest of the property." In sustaining the objection to Ms. Peyton's testimony in the first case, the judge said, "Under Ms. Peyton's method of valuation, one could pick any spot of land out of the entire tract and Ms. Peyton would value it at $2.50 per square foot. And yet, it is obvious that some portions of the tract are worth more than that, some less."

At the second trial, Ms Peyton evaluated the appellees' land separately. Two tracts were still given the value of $2.50 per square foot, but "to be conservative," Ms. Peyton testified, the other tracts "were adjusted" to $2.00 per square foot. She testified that she had changed her "approach" for the second trial, but admitted "I have gone back and recalculated to come up with a different method for establishing basically the same thing." Ms. Peyton did testify that she started with a square-foot valuation based on the market value of comparable property. She said she adjusted the value of the appellees' property based on the information she gathered on the cost of filling appellees' land to where it would be suitable for commercial development. She admitted there was a problem with access to that portion of appellees' property south of the creek, that she had "no idea" what it would cost to build a bridge over the creek, but she thought there were "all kinds of possibilities in dealing with that creek besides building a two million dollar bridge across it." She also testified, using the Williford property as an example, that after his property was filled, brought to grade, and was ready to be built

on, it would be worth $2.50 per square foot; that this would be the average price, the portion north of the creek and fronting on Kanis Road being worth $6.00 per square foot and the portion south of the creek being worth $.50 per square foot.

Because the motion to strike is largely a matter of discretion, we cannot hold that the trial court erred in refusing to strike Ms. Peyton's value testimony, but her testimony impacts on the next point that we discuss.

## II.

The second point we discuss is appellant's argument that the trial court applied the wrong measure of damages.

Appellant offered two instructions, which were refused, on the measure of just compensation. Requested Instruction No. 3 was as follows:

> The measure of damages allowed for the taking of land for a right-of-way or easement is the market value of the land so taken and, separately, the damage, if any, resulting from the taking to the owner's remaining lands.

The other instruction offered by appellant on the measure of just compensation was requested Instruction No. 4, which stated:

> You are instructed that the measure of compensation to be paid for the temporary easement is the fair rental value of the property within the temporary easement for the period of construction which, in this case, was one year.

The court refused each of the above requested instructions, and over appellant's objection that it was the wrong measure of damage, the court gave the jury the following instruction:

> You are to assess the damages to the property of Doug Williford, Juanita Starks, Ron and Diana Hopper and Tom Starks and you must then fix the amount of money which will reasonably and fairly compensate each of them for the difference in the fair market value of the lands of each immediately before and immediately after the taking.

The appellant contends that the correct measure of damages in a condemnation case involving a partial taking by a nonsovereign condemnor is the value of the land taken plus any damage to the remainder, but if the taking is by the sovereign, the correct

measure is the difference in the fair market of the entire tract immediately before and immediately after the taking. Our decision in *Arkansas Louisiana Gas Co.* v. *James*, 15 Ark. App. 184, 692 S.W.2d 761 (1985), is cited in support of appellant's contention. In that case we acknowledged that the rule in the two situations is different. We explained that this results from the right of the sovereign to have any special benefits offset against the damages sustained by the landowner, while no such right exists where the condemnor is a private corporation. Cited in support of our explanation where the cases of *Arkansas Louisiana Gas Co.* v. *Howell*, 244 Ark. 86, 423 S.W.2d 867 (1968), and *Ozark Gas Transmission System* v. *Hill*, 10 Ark. App. 415, 664 S.W.2d 892 (1984).

As we stated in *James*, the Arkansas Constitution permits the state to authorize private corporations to condemn property but Article 12, § 9 provides that full compensation must be paid by the corporation "irrespective of any benefit from any improvement proposed by such corporation." What this means was summed up by the Arkansas Supreme Court in *Howell*:

> Consequently, we hold that, when a private corporation takes property through the process of eminent domain, damages are properly awarded on the basis of the full fair market value for the easement taken, plus any damage occurring to the remainder of the property.

244 Ark. at 90.

Although the appellees contend that the appellant improvement district should be accorded the status of sovereign for the purpose of determining the proper measure of damages when the district exercises its power of eminent domain, we do not agree. Appellant is a property owners' improvement district formed under the provisions of Ark. Code Ann. §§ 14-93-101 — 14-93-133 (1987 and Supp. 1991). Ark. Code Ann. § 14-93-113(a) (Supp. 1991) provides:

> (1) All districts organized under this chapter shall have the right of eminent domain in order that they may carry out the purposes of their creation.

> (2) This right shall be exercised in the same manner as in the case of railroad, telegraph, and telephone compa-

nies, but without the necessity of making a deposit of money before entering into possession of the property condemned.

The right of eminent domain granted to railroad, telegraph, and telephone companies is controlled by Ark. Code Ann. §§ 18-15-1201—18-15-1207 (1987). Section 18-15-1204(b) provides:

> The amount of damages to be paid the owner of the lands for the right-of-way for the use of the company shall be determined and assessed irrespective of any benefit the owner may receive from any improvement proposed by the company.

It is clear that the explicit statutory provisions governing the exercise of the appellant improvement district's right of eminent domain require payment for the market value of the land taken without offset for any benefit the landowner may receive from the construction of the improvement.

Thus we have two methods to arrive at just compensation in eminent domain cases. When the sovereign exercises its right to take a portion of a tract of land, the proper way to measure just compensation is by the difference in the fair market value of the entire tract immediately before the taking and the fair market value immediately after the taking. In this way any special benefit resulting from the public use of the land taken by the sovereign which increases the value of the land not taken will offset the amount the sovereign will have to pay. This is proper because the owner of the land has received his just compensation, although partly by the increase in value of the land he has left.

On the other hand, where railroad, telegraph and telephone companies (or improvement districts) exercise the right of eminent domain, the just compensation to the owner of the land taken is properly measured by the value of the portion of the land taken plus any damage to the portion left. In this way, the owner of the land receives payment "irrespective of any benefit" the owner may receive from the construction of the improvement. This is proper because it is what the statutes enacted by the legislature of this state, in keeping with our constitution, provide.

Our case of *Arkansas Louisiana Gas Co.* v. *James, supra*, which thoroughly discussed these two measure of just

compensation, and the reasons for them, also discussed another point argued by the appellees in the instant case:

> While testimony as to the before and after values might be prejudicial to the landowner as permitting the trier of fact to consider special damages, it prejudices no right of the appellant corporation. If there was technical error in admitting this testimony of appellee it was harmless.

15 Ark. App. at 189. While there was no prejudice to the appellant in *James*, we think there was prejudice in the instant case. Here, the easement taken for the sewer line was within the Rock Creek floodway. Neither of the appellees' expert witnesses testified to the value of the easement actually taken. Their testimony focused upon the difference in the value of the appellees' property before and after the taking. This is also how the trial court's instruction told the jury to arrive at the amount of just compensation to be awarded to the appellees. This case, however, is not like the *James* case where only the testimony was at issue. There is nothing in that opinion which suggests that the court instructed the jury that the way to measure just compensation was to take the difference in the before and after values. Under the peculiar circumstances here, including the vast difference in the appellant's and appellees' value testimony, we think it was error for the court to instruct the jury to award the appellees the difference in the before and after value of their property instead of the value of the property taken and the damage, if any, to the land remaining. The appellant has expressed the point as follows:

> [B]y applying the before and after measure, the Court enabled the Appellees' value witnesses to establish an "across the board" average value per square foot of each of the tracts involved which had the effect of increasing the value of the floodway lands because they were averaged with the Kanis Road frontage.

As the appellant points out, Ms. Peyton testified that two tracts were worth $2.50 per square foot and the other tracts were worth $2.00 per square foot. She did not, however, testify as to the value of the property *taken* for the easement. We think the failure of the trial court to correctly instruct the jury to base compensation on the value of the easement taken, plus any damage to the

property remaining, constituted reversible error. We also think the court should have given appellant's requested Instruction No. 4, which pertained to the temporary easement.

## III.

We now discuss appellant's argument that the trial court should have allowed the landowners to be questioned concerning the purchase price paid for their properties. We think the court did err in not allowing appellant to cross-examine appellee Williford about this matter since Williford said on direct examination that he "certainly paid more" for his property than the appellant offered to pay for the taking of Williford's property. However, this point may not arise on retrial. As to the other appellees, the considerations on retrial will involve how recent the purchase was, whether the transaction was voluntary, whether there has been marked fluctuation in values since the purchase, and various other factors. *See Arkansas State Highway Commission* v. *Hubach*, 257 Ark. 117, 514 S.W.2d 386 (1974); *Arkansas Power and Light Co.* v. *Llewellyn*, 268 Ark. 839, 595 S.W.2d 712 (Ark. App. 1980).

## IV.

Finally, we discuss the appellant's contention that the trial court erred in refusing to instruct the jury that the landowners has the burden of proving that the amount deposited by the appellant was not sufficient as just compensation for the property taken. Instruction No. 6, offered by appellant and refused by the court, was as follows:

> The defendants contend that the plaintiff has not offered just compensation for the easement right taken for the sewer line. The defendants have the burden of proving this contention.

The court also refused appellant's requested instruction No. 7, which is AMI Instruction 202. This instruction would have told the jury that the party who has the burden of proof on an issue must establish it by a preponderance of the evidence and would have defined the meaning of preponderance of the evidence.

It has long been recognized in Arkansas that the burden of

proof on the issue of just compensation is upon the landowner. In *Springfield and Memphis Railway* v. *Rhea*, 44 Ark. 258 (1884), the court said:

> To the defendant were justly accorded the opening and conclusion of the argument. The landowner is, in such cases, the real actor, no matter which party initiates the proceedings. No issue can be raised as to the right of the railroad corporation to condemnation, or as to his right to compensation. The law confers these rights, and the filing of the petition by the railroad company is an admission that he is entitled to some damages. The extent of the damage is the object of the inquiry. *And here the burden of proof is upon him.*

*Id.* at 264 (emphasis added). We do not find where this point has been questioned since the above case was decided; however, the Arkansas Supreme Court has occasionally repeated the rule. In *Arkansas State Highway Commission* v. *Hambuchen*, 243 Ark. 832, 833, 422 S.W.2d 688 (1968), the court said, "The landowners, having the burden of proof on the issue of value, rested their case after having produced only two witnesses." In *Arkansas State Highway Commission* v. *Southern Development Corporation*, 250 Ark. 1016, 1020, 468 S.W.2d 102 (1971), the court said, "Market value is a factual issue peculiarly within the province of the jury and to be proved by the owner as a fact." And in *Arkansas State Highway Commission* v. *First Pyramid Life Insurance Company*, 265 Ark. 417, 579 S.W.2d 587 (1979), Justice Fogleman, dissenting in part, said, "In this case, the ultimate power of the sovereign is pitted against the private citizen-subject who bears the burden of proving by a preponderance of the evidence the amount of 'just compensation' due him for his property taken by the sovereign," 265 Ark. at 427.

Moreover, Ark. Code Ann. § 16-64-110 (1987), in pertinent part, states:

> (3)(A) The party on whom rests the burden of proof in the whole action must first produce his evidence;

> (B) The adverse party will then produce his evidence;

. . . .

> (6) The parties may then submit or argue the case to the jury. In the argument the party having the burden of proof shall have the opening and conclusion; and if, upon the demand of his adversary, he refuses to open and fully state the grounds upon which he claims a verdict, he shall be refused the conclusion.

In keeping with the above statutory provisions, the appellees in this case first produced their evidence, and in the arguments to the jury the appellees opened and closed.

■ We think it is clear that in Arkansas in a condemnation case where the issue is just compensation the landowners have the burden of proof on that issue. While the appellees cite some authority in other jurisdictions which hold that neither party has the burden on this issue — that it is simply a question of going forward with the evidence — we think the rule is different in this state and that this case was subject to our well-established rule that places the burden of proving just compensation on the landowner and gives him the right to open and close in producing evidence and arguing the case to the jury.

The appellees suggest, however, that even if they had the burden of proof, it was not reversible error for the trial court to refuse to give appellant's requested jury instruction on that point. We cannot agree.

■ The just compensation evidence in this case varied tremendously. Appellees' witness, Jay DeHaven, fixed their just compensation at more than $260,000. The highest amount fixed by the appellant's witnesses was $3890. The per-acre value of the land owned by appellees ranged between $340,000 to $420,000 according to appellees' evidence and from $1000 to $5300 according to appellant's evidence. We believe the jury should have been told who had the burden of establishing the amount of just compensation to which the appellees were entitled. Moreover, by refusing to give appellants' requested instruction No. 7, there was no instruction by the court that gave the jury any guidance on the amount, degree, or weight of the evidence upon which it should base its verdict. In addition to telling the jury that the party who has the burden of proof on an issue must establish it

by a preponderance of the evidence, instruction No. 7 would have told the jury that "it, upon any issue in the case, the evidence appears to be equally balanced,of if you cannot say upon which side it weighs heavier, you must resolve that question against the party who has the burden of proving it."

■ Both requested instructions No. 6 and 7 would have given crucial guidance to the jury which had the task of making a decision based upon enormously conflicting evidence. However, we are not satisfied that appellant's requested instruction No. 6 was totally correct, and it is the general rule that a party entitled to an instruction on an issue may not complain of the failure of the court to instruct on the matter if the requested instruction is erroneous or incomplete. *Pineview Farms, Inc.* v. *Smith Harvestore, Inc.*, 298 Ark. 78, 90, 765 S.W.2d 924, 931 (1989). And if appellant's requested instruction No. 6 should not have been given, requested instruction No. 7 would have been abstract and could not have been given. Nevertheless, we are reversing this case on another point, and in view of another trial we discuss the problem presented by appellant's requested instruction No. 6.

■ That instruction would have told the jury that the landowners contend the improvement district has not *offered* just compensation and the landowners have the burden of proving this contention. We are aware of the case of *Arkansas State Highway Commission* v. *Johnson*, 300 Ark. 454, 780 S.W.2d 326 (1989), and its holding that Ark. Code Ann. § 27-67-312 (1987) requires an estimate of just compensation to be annexed to the declaration of taking of property for public highway purposes and that this estimate is not a negotiation or settlement figure excluded as evidence by Ark. R. Evid. 408. See 300 Ark. at 462, 780 S.W.2d at 330. That statute, however, applies to eminent domain actions brought by the State Highway Commission. The statutes applicable to such actions brought by improvement districts do not make the same provision. Even more important is the tendency of appellant's requested instruction No. 6 to focus the jury's attention on the landowners' burden to prove that the appellant *had not offered* just compensation rather than the *amount* of just compensation to which the landowners were entitled.

On retrial, we think the issues in this case can be properly submitted to the jury by the usual instructional format which

would tell the jury that this is an eminent domain action whereby the improvement district is taking the permanent and temporary easements necessary to construct and maintain a sewer system. The instructions should then tell the jury that "you have the duty to determine from a preponderance of the evidence, and from the rules set out in the court's instruction, the amount of just compensation to be awarded the defendants." That instruction should be followed by the instruction on the measure of damages applicable to the case as set out in appellant's requested instructions No. 3 and 4. Those instructions should be followed with one which tells the jury that the burden of proof is on the landowners to prove their claims for just compensation by a preponderance of the evidence. That phrase should then be defined as set out in appellant's requested instruction No. 7, which is AMI Instruction 202.

Of course, other specific instructions would be given as needed, but the instructions outlined above will, in our opinion, present the basic elements to the jury on retrial.

Reversed and remanded.

CRACRAFT, C.J., concurs in the result.

JENNINGS, J., dissents.

ROGERS, J., joins in the dissent.

JOHN E. JENNINGS, Judge, dissenting. The circuit judge's instructions to the jury were entirely correct and afford no ground for reversal.

Appellant's proffered instruction number seven was AMI 202, the general instruction on burden of proof:

> A party who has the burden of proof on a proposition must establish it by a preponderance of the evidence, unless the proposition is so established by other proof in the case. "Preponderance of the evidence" means the greater weight of evidence. The greater weight of evidence is not necessarily established by the greater number of witnesses testifying to any fact or state of facts. It is the evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be

equally balanced, or if you cannot say upon which side it weights heavier, you must resolve that question against the party who has the burden of proving it.

The Arkansas Supreme Court has said on a number of occasions that the landowner has the burden of proof on the issue of the value of the land. *Springfield & M. Ry.* v. *Rhea*, 44 Ark. 258 (1884); *Arkansas State Highway Comm'n* v. *Hambuchen*, 243 Ark. 832, 422 S.W.2d 688 (1968); *Arkansas State Highway Comm'n* v. *Southern Dev. Corp.*, 250 Ark. 1016, 468 S.W.2d 102 (1971). If the landowner has the burden of proving value, why then would the condemnor not be entitled to have AMI 202 given? The answer lies in the fact that the term "burden of proof" is used in the law to mean two quite different things. It may refer to the "burden of persuasion" (or "risk of non-persuasion"), or it may refer to the burden of going forward with the evidence ("the production burden"). This distinction was made at least as early as 1898 by Professor James B. Thayer and is explained in elementary text books on civil procedure. *See* Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* § 7.5 et. seq. (3d ed. 1985). We have recognized the distinction in another context. *See Reese* v. *State*, 26 Ark. App. 42, 759 S.W.2d 576 (1988).

The landowner in an eminent domain proceeding has the burden of going forward with the evidence. He is entitled to open and close the argument. *Rhea, supra*, at 264. He must put on his evidence first and should he offer no evidence at all he would no doubt be subject to the entry of a directed verdict and would have judgment only for the amount deposited in the registry of the court by the condemnor. These are matters addressed to the court not the jury. James & Hazard, *supra*, § 7.7. It is in this sense that the landowner has the burden of proof.

The burden of persuasion, however, is dealt with in instructions to the jury such as AMI 202 which tell the jury how to resolve an issue if the evidence on that issue is equally balanced. *See* James & Hazard, *supra*, at § 7.6. To put the burden of persuasion on the landowner on the issue of damages in an eminent domain case would be to tell the jury to set damages at the amount testified to by the condemnor's witness when the evidence on each side weighs equally. Surely in such a case the jury may set the damages somewhere in between the value

testified to by the opposing experts. *See L.R. Junction Ry.* v. *Woodruff*, 49 Ark. 381, 5 S.W. 792 (1887).

The failure to observe the distinction between the two meanings of "the burden of proof" has aptly been said to lead to "hopeless confusion." *See* James & Hazard, *supra*, at 314.

Nichols says that the majority rule is that the landowner has the burden of proof.

> From the rule that an award is [vacated] by appeal and cannot be considered by the jury in determining damages, it follows that the burden of proof of establishing his right to substantial compensation is upon the owner, even if he is defendant or respondent in the proceeding, since it is clear . . . that if no evidence were introduced by either party, the jury would have no basis upon which to fix the compensation and would be bound to award nominal damages only. [Footnotes omitted.]

5 Julius L. Sackman, *Nichols' Law of Eminent Domain* § 18.5 (rev. 3d ed. 1985). Although the distinction is not expressly made, it is clear enough that Nichols uses the term "burden of proof" in the sense of the burden of going forward with the evidence.

The Conference of Commissioners on Uniform State Laws also explicitly recognized this distinction in drafting the Model Eminent Domain Code (1984). Section 903(a), addressing the burden of production, states "The defendant shall make the first opening statement, proceed first in the presentation of evidence on the issue of the amount of compensation, and make final closing argument." As the comment to section 903 notes, "Subsection (1) is consistent with the majority view in the United States that the property owner, in an eminent domain action, has the right to open and close, and may proceed first with the presentation of evidence on the issue of the amount of compensation."

In contrast, § 904 of the Model Code, regarding the burden of persuasion, provides that, "No party has the burden of proof on the issue of the amount of compensation." The comment to that section states:

> It seems difficult to assign an intelligible meaning to

the concept of "burden of proof" in the eminent domain context, since the pleadings are not required to allege or deny the amount of compensation claimed, and the ultimate standard of decision is the constitutional rule of "just compensation." The amount of compensation that is "just" is essentially an objective market-established fact, although the practical difficulties of marshalling persuasive evidence of that fact are often formidable. From a realistic view, the trier of fact ordinarly is presented with varying and inconsistent opinions as to value, together with disparate supporting data; the ultimate determination necessarily reflects the weight and degree of credibility accorded to these estimates. Under these circumstances, no rational policy basis exists for assigning presumptive validity to the amount specified either in the condemnor's offer or in the property owner's demand, thereby requiring the adverse party to assume the burden of controverting that figure.

The Supreme Court of Ohio has said the same thing: "You might as well undertake to fit a hat to a headless man as to fit the doctrine of burden of proof to a proceeding of this character [eminent domain], which is absolutely wanting an issue to which such doctrine can be applied." *Martin* v. *City of Columbus*, 101 Ohio St. 1, 127 N.E. 411 (1920).

Recent cases have recognized the distinction between the two meanings or aspects of "the burden of proof" and have declined to place the burden of persuasion on the landowner. In *State* v. *45,621 Square Feet of Land*, 475 P.2d 553 (Alaska 1970), the Supreme Court of Alaska hit the nail on the head:

In a condemnation proceeding such as the case at bar where the sole issue is determination of just compensation, procedural rules involving the concept of risk of failure to persuade are inapposite.Here the focal point of the trier of fact's inquiry is the ascertainment of just compensation. Thus, regardless of whether the condemning agency or the property owner meets a given burden of persuasion, Alaska's constitutional mandate requires that the owner be awarded just compensation for the property he has lost. In the usual condemnation case, the jury is confronted with

conflicting opinions as to value. The jury is not faced with the necessity of finding a particular value or no value at all. As to the issue of fair market value, both the condemning agency and the property owners may produce competent evidence of the fair market value of the condemned property. Absent the production of such evidence by either party, the triers of fact will determine fair market value solely from the other party's evidence. The burden of production facet of burden of proof, rather than the risk of non-persuasion aspect, is the more meaningful concept in the trial of a condemnation proceeding.

*See also Solko* v. *State Roads Comm'n*, 82 Md. App. 137, 570 A.2d 373 (1990) ("Condemnation cases are fundamentally different from other kinds of cases where value is concerned."); *Hamer* v. *School Bd.*, 240 Va. 66, 393 S.E.2d 623 (1990) (No ultimate risk of non-persuasion on the issue of just compensation in a condemnation proceeding); *Ellis* v. *Ohio Turnpike Comm'n*, 124 N.E.2d 424 (1955), *rev'd on other grounds*, 164 Ohio St. 377, 131 N.E.2d 397 (1955) (jury acts as an assessing or appraising board, determining the fair-market value of the property from all the evidence submitted); *Morrissey* v. *Commonwealth Dep't of Highways*, 424 Pa. 87, 225 A.2d 895 (1967) (instructing jury that condemnees had burden of proving that their damages were greater than damages testified to by condemnor usurped power and function of jury); *Unified Sewerage Agency* v. *Duyck*, 33 Or. App. 375, 576 P.2d 816 (1978) ("Either party may provide evidence of factors which contribute to an assessment of just compensation, but neither has the burden of proof").

The circuit court was right not to give appellant's proffered instruction number seven and the judge's ruling does not violate or conflict with any decision of our supreme court.

Appellant's proposed instruction number 6 would have told the jury that the landowners had the burden of proving that they had "not [been] offered just compensation." If the instruction is construed to mean that the landowner has the burden of persuasion, it was wrong for the reasons just stated. On the other hand, if the instruction means only that the landowners had the burden of going forward with the evidence, it may be a correct statement of law but relates to a matter addressed solely to the trial judge and

is not a matter for instruction to the jury. *See* James & Hazard, *supra*, § 7.7.

The majority also holds that the trial judge committed reversible error in telling the jury that the measure of damages was the difference between the value of their land before the taking and after the taking. According to the majority the circuit court should have told the jury to award the landowners the value of the land actually taken *plus* the damage, if any, to their remaining lands.

Our opinion in *Arkansas Louisiana Gas Co.* v. *James*, 15 Ark. App. 184, 692 S.W.2d 761 (1985), adequately explains why appellant, the condemnor, could not possibly be prejudiced by the failure to give an instruction which draws the jury's attention to severance damages as a separate element of damages. But apart from *James*, the supreme court has made it fairly clear that in a "partial taking case" the two instructions at issue here are merely different versions of the same rule; they offer "alternative formulas" to arrive at just compensation. *See Young* v. *Arkansas State Highway Comm'n*, 242 Ark. 812, 415 S.W.2d 575 (1967); *Arkansas State Highway Comm'n* v. *Morris*, 244 Ark. 1152, 1155, 429 S.W.2d 114, 116 (1968) (Brown, J., concurring). The court should not give both instructions. *Young; Morris, supra.* But the instruction given by the judge here has been approved expressly or impliedly by the supreme court in partial taking cases. *Arkansas Louisiana Gas Co.* v. *McGaughey Bros.*, 250 Ark. 1083, 468 S.W.2d 754 (1971); *Arkansas State Highway Comm'n* v. *Delaughter*, 250 Ark. 990, 468 S.W.2d 242 (1971); *Arkansas State Highway Comm'n* v. *Stallings*, 248 Ark. 1207, 455 S.W.2d 874 (1970); *Clark County* v. *Mitchell*, 223 Ark. 404, 266 S.W.2d 831 (1954); *St. Louis, A. & T. R.R.* v. *Anderson*, 39 Ark. 167 (1882). The drafters of the Model Code, as well as Nichols and Orgel, not only recognize the two formulas as essentially equivalent but also prefer the "before and after" rule followed by the circuit judge in the case at bar. Model Eminent Domain Code § 1002 comment (1984); 4A Julius L. Sackman, *Nichols' the Law of Eminent Domain* § 14.05 (rev. 3d ed. 1985); 1 Lewis Orgel, *Valuation Under the Law of Eminent Domain* § 65 (2d ed. 1953). I see neither error nor prejudice in the court's instruction on the measure of damages.

If the question were whether the landowners received more money for their property than should reasonably been awarded, I could perhaps agree. But that is neither an issue on appeal nor a stated basis for our reversal.

For the reasons stated, I respectfully dissent.

ROGERS, J., joins in this dissent.